# SUPREME COURT

OF THE

## STATE OF ARKANSAS,

AT THE

## *NOVEMBER TERM, 1874.*

---

## HURLEY VS. THE STATE.

1. CRIMINAL PRACTICE.
   Under our statute, service of a copy of the indictment on the accused while he is in prison, and in the absence of his counsel, is sufficient, and the same is true as to the jury list, if, under the code practice, he is entitled to the latter.

2. — Objection to the panel should be taken by motion to set it aside.

3. — The erroneous rejection of a talesman is not a ground for new trial; it is in the discretion of the court to excuse a talesman for any ground deemed sufficient, without prejudice to the accused.

4. EVIDENCE: *Secondary.*
   When the substance of the testimony of a witness before the committing magistrate was, by consent of defendant's counsel, taken down by the attorney for the state, and read to and subscribed by the witness, in the presence of the accused, and when he had an opportunity of cross examining, and the witness was out of the jurisdiction at the time of the trial, the deposition may be read as secondary evidence, without any violation of the rule that " the accused shall be confronted by the witnesses against him."

VOL. XXIX. — 2

Hurley vs. The State.

5. — *Objections to testimony should be specific.*

When no specific objection is made to the competency or relevancy of the testimony, this court will not attempt to pass upon it.

6. CRIMINAL PRACTICE: *To what papers the jury entitled.*

Upon retiring for deliberation, the jury may take with them, and read, all papers that have been received in evidence in the cause, and it is in the discretion of the court to permit them to take the instructions.

7. INSTRUCTIONS.

An instruction by the court, though it may be unnecessarily long and redundant, and a portion of it argumentative for the purpose of comparing the relative value of direct and circumstantial testimony, and to some extent abstract, such parts being sufficiently qualified by other instructions, will be sustained, if, upon the whole, the charge seems to have been fair, impartial, and composed of principles of law expressed in substantially correct terms.

8. JOINT INDICTMENT: *Proof under, where the accused sever at the trial.*

Where two persons are jointly indicted for murder, and sever at the trial, it is sufficient to prove the guilt of the one on trial, though the jury may have a doubt as to that of the other.

9. INSTRUCTION.

The refusal of the court to give an instruction that is not applicable to the indictment is no ground for new trial.

10. PRESUMPTIONS: *In favor of the circuit court.*

In the absence of any showing to the contrary, it must be presumed by this court that the oath was administered to the jurors in proper form.

11. JURORS: *How talesman sworn.*

When the regular panel is exhausted, and the deficiency of jurors is supplied by talesmen, they may be sworn separately as they are selected.

12. — *Clerical error as to name of, how corrected.*

When it appears that a juror belonged to the regular panel for the term; that the ticket upon which his name was written before drawing contained his proper name, and that by a clerical misprision, the clerk entered his name erroneously in the record of the proceedings, the error may be corrected by the court on the motion of the attorney for the state.

Hurley vs. The State.

APPEAL from *Washington* Circuit Court.

Hon. E. D. HAM, Circuit Judge.

*J. D. Walker*, for appellant.

*John R. Montgomery*, Attorney General, *contra.*

ENGLISH, C. J.    Patrick Hurley and James Hurley were jointly indicted in the Washington circuit court, for murdering John Schiner, by shooting him with a gun.    They severed, and James Hurley was tried on the plea of not guilty, verdict of murder in the first degree as charged, motion for new trial overruled, bill of exceptions, sentence of death and appeal.

Twenty-two grounds for a new trial were assigned in the motion :

I. That the court compelled the appellant to go to trial without being served, according to law, with a copy of the indictment.

The statute provides that :    " It shall be the duty of the clerk of the court in which an indictment against any person for a capital offense may be pending, whenever the defendant shall be in custody, to make out a copy of such indictment and cause the same to be delivered to the defendant or his counsel, at least forty-eight hours before he shall be arraigned on such indictment, but the defendant may, at his request, be arraigned and tried at any time after the service of such copy." Gantt's Dig., sec. 1825.

It appears of record that the appellant was arraigned, and pleaded not guilty, Sept. 29, 1870.    It appears from the bill of exceptions, that the clerk made and delivered to the sheriff a certified copy of the indictment, which was delivered to the appellant in person, at 5 o'clock P. M., Sept. 26, 1870, in the absence of his counsel, and that the appellant remained in prison, without an interview with his counsel, until he was brought out for arraignment and trial.    The indictment was found at the previous term of the court.

The objection seems to be, that the copy of the indictment was served on the appellant when he was in prison, and in the absence of his counsel.   Under the statute, the copy may be delivered to the prisoner or his counsel.   If delivered to the prisoner, the statute does not require it to be done in the presence of his counsel, nor that the prisoner shall be brought into court to be served with the copy.   If between the time of the service of the copy and the arraignment, the prisoner has had no opportunity of consulting with counsel, the court has the discretion to allow him reasonable time for that purpose before requiring him to plead to the indictment, and this is usually done.   But the point here seems to be that he was served in the prison, and in the absence of his counsel, and there was no error in this.

II. The second ground assigned in the motion for a new trial is, that the court erred in compelling the appellant to go to trial without his having been served in accordance with law with a list of jurors properly and legally selected for the trial of the cause.

It appears from the bill of exceptions that when the appellant was brought into court for trial, he objected to the progress of the cause, because he had not been served in accordance with law, with a copy of the venire.   In support of the objection, he proved by the sheriff that at the time he was served with a copy of the indictment, as above stated, he was also served with a certified list of the twenty-four jurors, selected and impaneled for the term, in the manner prescribed by the code, and the court overruled the objection and directed the trial to proceed.

Any objection to the panel should have been taken by motion to set it aside.   *Anderson v. The State*, 5 Ark., 444.

If, under the code practice, the appellant was entitled to a list of the jurors, as he was under the former practice (Gould's

Dig., ch. 52, sec. 155, 156), and as to which we express no opinion, as the question is not raised, it is no valid objection that the list was served on him when in prison and in the absence of his counsel, which seems to be the matter of complaint in this case.

III. That the court erred in deciding that one O. S. Darling, who had been summoned by the sheriff as juror, was disqualified to be a juror.

It appears from the bill of exceptions (No. 2) that after the regular panel had been exhausted by challenges, etc., without making up a jury, Darling, with others, was brought in by the sheriff as a talesman, and being questioned on oath touching his competency, stated that he was disfranchised by the laws of Missouri, from whence he came to Arkansas in September, 1868. That the reason why he thought he was disfranchised by the laws of Missouri was, that the registrars there had refused to let him vote. He had served in the confederate army, and had never advocated or voted for reconstruction any where. Had lived in Washington county since September, 1868; had never been convicted of any crime, nor held an office before the war, nor taken any oath before or since the war to support the constitution or government of the United States, except an oath which he took near the close of the war; had never engaged in uncivilized warfare, etc., and was not upon the grand jury that found the indictment in this case, etc. Upon this examination, the court decided that he was not competent to serve as a juror, and appellant excepted.

A juror must be an elector. Gantt's Dig., sec. 3673. By a clause in the constitution of 1868, as originally framed, a person disqualified as an elector or from holding office in the state from which he came was not permitted to register, vote, or hold office in this state. Clause 2d, sec. 3, art. VIII.

Whether Darling was legally disfranchised by the laws of

Missouri, we cannot say, nor do we think the court below could have decided with an assurance of being right, for the franchise laws of Missouri were not introduced in evidence. Darling, however, stated that he had been refused registration in Missouri, and the court, perhaps, thought it safer to reject than to admit him as a qualified juror.

But whether the court was right or wrong in this, it is not material to decide, for if wrong, the erroneous rejection of a talesman would be no sufficient cause for granting the appellant a new trial. He had no legal right to have that particular person as a juror. The court might have excused the talesman from serving on the jury for any cause deemed sufficient, in its discretion, without legal prejudice to the appellant.

We have not overlooked the provision of the code, that decisions of the court upon challenges to the panel, or for cause, etc., shall not be subject to exception (Gantt's Dig., sec. 1978), but we have no occasion, in this case, to pass upon the effect or constitutional validity of this provision of the code.

IV. That the court erred in permitting the state to read in evidence to the jury the deposition of Thomas Bevens.

The testimony of Bevens was taken before the committing magistrate, in the presence of the appellant, reduced to writing by one of the counsel for the state, by agreement with the counsel for appellant, read over to the witness, sworn to and subscribed by him, etc. The precise language used by the witness was not written, but the substance of his testimony was taken down. He had become a nonresident of the state before the trial, and the prosecuting attorney had been unable to procure his attendance.

These were the material facts about this deposition, proven to the court when it was offered in evidence, as shown by the

bill of exceptions. (No. 3.) The court permitted the deposition to be read to the jury, against the objection of the appellant.

It is a provision of the constitution of the United States, and of the constitution of the states generally, that in criminal prosecutions the accused "shall be confronted with the witnesses against him," or as expressed in our bill of rights of 1836, "to meet the witnesses face to face." It is remarkable that a similar provision is not to be found in the constitution of 1868, which was in force when this cause was tried below.

But the admission of the deposition of Bevens was no violation of this old landmark of the criminal law. He had been legally sworn and examined before the committing magistrate, in the presence of the appellant, and where he had an opportunity of cross examination, his testimony had been reduced to writing, read to and subscribed by him, and delivered to the clerk by the magistrate, and the witness was out of the jurisdiction of the court when his deposition was offered in evidence on the trial, and was admissible as secondary evidence. 1 Greenl. Ev., sec. 11; *Bostick v. The State*, 3 Humph., 344; *State v. Valentine*, 7 Iredell, 224; *Pope v. The State*, 22 Ark., 372.

V. That the court erred in refusing to permit to be read to the jury, the evidence of John Morrow, as contained in the last bill of exceptions in the case of *The State v. Patrick Hurley*, jointly indicted with appellant.

This is a mere statement in the motion for a new trial, and it is not shown by bill of exceptions that such evidence was offered and excluded.

VI. That the court erred in admitting the testimony of Hugh Glass, as set out in bill of exceptions No. 5.

The bill of exceptions does not show that any specific ob-

jection was made to the competency or relevancy of the testimony of this witness, nor has the counsel for appellant referred, in his brief, to this point. We are left to conjecture what particular objection was made to the testimony of Glass in the court below, and we are not disposed to attempt to decide conjectural questions. Some of the facts stated by Glass may have been remote from the issue, or immaterial, but if so, we do not see how they were prejudicial to the appellant.

VII. That the court erred in permitting the jury, when they retired to consider of their verdict, to take with them the deposition of Thomas Bevens.

The deposition of Bevens was read in evidence, as above shown.

It appears from the bill of exceptions (No. 4) that after the cause was argued, and the charge of the court given to the jury, and when they were about to retire, the court detached the deposition of Bevens from other depositions, etc., returned by the committing magistrate, which had not been read in evidence, and delivered it to the jury, and they took it with them on retiring, against the objection of appellant.

Upon retiring for deliberation, the jury may take with them all the papers which have been received as evidence in the cause. Gantt's Dig., p. 422, sec. 1942; *Atkins v. State*, 16 Ark., 590.

VIII. That the deposition of Bevens was read by the jury during their retirement, in the absence of the appellant.

The deposition having been read in evidence to the jury, and the court having permitted them to take it with them on retiring to consider of their verdict, they had the right to read it, and the appellant had no right to be present.

IX, X, XI, XII, XIII, XIV. The ninth, tenth, eleventh, twelfth, thirteenth and fourteenth grounds, assigned in the

motion for a new trial, relate to the instructions given and refused by the court to the jury.

The court, of its own motion, gave to the jury a written charge of considerable length, and which we deem it unnecessary to copy. The court told the jury in substance, that the appellant (with his brother, Patrick Hurley) was indicted for murder in the first degree; stated the substance of the indictment, defined that grade of offense very nearly in the language of the statute, informed the jury of the material facts necessary to be proven by the state, made some remarks upon the law of conspiracy, and of principals in the crime of murder, called the attention of the jury to the fact, that the killing of Schiner, and that he came to his death by violence was not controverted, and that the state had attempted to connect the appellant with the killing by circumstantial evidence only, and then proceeded to instruct the jury in relation to the character and weight of such evidence, very much in the language of the text books, cautioning the jury that they could not convict the defendant unless satisfied by the evidence of his guilt beyond a reasonable doubt, and explaining the legal meaning of such doubts.

It appears from the bill of exceptions that the counsel of the appellant made general objections to the charge; such as that it was redundant, argumentative and abstract, especially that portion of the charge relating to conspiracy.

That the charge was unnecessarily long, superabundant, may be true, but we are not aware that we have the power, or that it is proper for us to undertake to prescribe exact limits for the charges of circuit judges in murder cases, though we think they should be as brief as the circumstances of the case will admit, concise, clear and comprehensive.

It is also true that a portion of the charge was argumentative, but the judge was comparing the relative value of

direct and circumstantial evidence, and arguing as the text writers do, that if direct evidence, or eye-witnesses were required to convict persons of crime, many secret crimes would go unpunished. The judge made no argument, however, tending to induce the jury to convict the appellant upon the circumstances in proof before them. He stated, argumentatively, merely, that which is the law, that where the *corpus delicti* is proven, the guilty agency of the accused may be established by circumstantial evidence.

It may be, that portion of the charge relating to the law of conspiracy was, to some extent, abstract, though there were two persons charged with the murder, and some circumstances in evidence tending to connect them in a common criminal purpose and act, but if there was anything objectionable in this portion of the charge, it was amply qualified by several instructions moved for appellant on the same subject and given by the court.

Upon the whole, the charge seems to have been fair, impartial, and made up of principles of law expressed substantially correct.

Ten instructions were asked for appellant, which were nearly as "rendundant" as the charge of the court; all of which were given but the ninth and tenth.

The ninth was: "That if the jury believe from the evidence in this case, that Thomas Bevens, or any other person, and James Hurley or Thomas Bevens and either James Hurley or Patrick Hurley, killed John Schiner, mentioned in said indictment, but cannot tell from the testimony and are not satisfied which two of the three did the killing, or were connected therewith, they should find the defendant not guilty."

It was not necessary for the state to prove that any two persons killed Schiner, or were criminally connected with the

killing. It was sufficient for the state to prove that appellant did the killing, or that some other person, no matter who, committed the murder, and that appellant was present, aiding, abetting or assisting in the perpetration of the crime.

True, the appellant and Patrick Hurley were jointly indicted for the offense, but if they had been tried together, one of them might have been acquitted and the other convicted. But they severed and it was sufficient, on the trial of the appellant, to prove his guilt, though the jury might have been in doubt as to whether Patrick Hurley, Bevens, or any other person implicated by the evidence, had a criminal agency in the commission of the murder. Gantt's Dig., secs. 1237-8 ; *Dennis v. State*, 5 Ark., 252. The instruction was properly refused.

The tenth was: " That in this cause the question as to whether the defendant is guilty of being accessory after the fact to the murder of John Schiner does not arise, he not being charged in the indictment against him of that offense."

We are at a loss to conjecture why this instruction was asked. The appellant was indicted as a principal, and not as an accessory after the fact, and was not, and could not have been convicted upon the indictment, as an accessory after the fact. We cannot see how the refusal of this instruction could possibly have been prejudicial to the appellant.

XV, XVI. Fifteenth, that the verdict was contrary to law ; and sixteenth, that it was contrary to evidence.

The verdict was in good form, and responsive to the indictment. The indictment charged appellant with murder in the first degree, and the verdict was : " We, the jury, find the defendant, James Hurley, guilty of murder in the first degree in the manner and form as charged in the within indictment."

Schiner seems from the evidence to have been the solitary occupant of a cabin near Fayetteville. On the morning of the

14th of December, 1870, he was found lying dead near his house, and the falling snow was melting on his warm, bleeding body. A large leaden ball had passed through his body, entered his house through a window pane, struck the opposite wall and fallen to the floor or ground. His skull was also fractured. The appellant and his brother Patrick lived at the house of one Morrow, about thirty yards from the cabin of the deceased. By the ball, a gun, ramrod, tracks in the snow, other mute witnesses and circumstances, they were connected with the crime. The jury who tried the appellant had all the facts and circumstances in proof before them. It was their province to weigh them and determine their sufficiency to establish his guilt. They found him guilty; the presiding judge refused to set aside the verdict, and it is not our province to review the evidence and pass upon its weight.

XVII. That the jury were not sworn in accordance with law, but were illegally sworn.

The record entries show that the jurors were sworn, but the form of oath administered is not set out in the entries, nor in the bill of exceptions. In the absence of any showing to the contrary, it must be presumed that the oath was administered in proper form. *Greenwood v. The State*, 17 Ark., 332.

XVIII. That the jury were not, during the trial of the cause, in charge of the proper officer of court duly sworn in accordance with law.

On this point the bill of exceptions shows nothing. The record entries show, with unusual particularity, that the jurors were placed in charge of a sworn bailiff whenever they left the jury box during the trial.

XIX. That the jury were not sworn all together, and after they were all selected.

The record entries show that the regular panel was exhausted by challenges, etc., and only part of the jurors ob-

tained. Such as were taken were sworn to try the cause. The sheriff was sent out for talesmen, brought them in, and from them other jurors were selected and sworn; and this process was repeated until the jury was completed, each lot of jurors so obtained being sworn when selected.

The record shows that all the jurors were sworn, but it does not show that the twelve were sworn together, after they were all selected. It was sufficient, we think, that they were all sworn, and not necessary that they should be sworn all together.

XX. That the court refused to permit the jury to take with them, when they retired to consider of their verdict, the instructions given by the court of its own motion, and the instructions given for appellant.

The bill of exceptions shows that when the jury were about to retire to consider of their verdict, the court refused to permit them to take from the bar the written instructions given them by the court. Whether the jury asked permission to take them, or the counsel for appellant asked the permission, does not appear.

By section 11, art. VII of the constitution of 1868, in all trials by jury, the judges were required to give their instructions and charges in writing. See also Gantt's Dig., 1930. Under the former practice, the judges gave their charges verbally, or in writing, at their pleasure. If exceptions were taken to them they were reduced to writing, and set out in the bills of exception. Instructions moved by the parties were generally reduced to writing, though sometimes moved verbally, and reduced to writing if made the subject of exceptions. In taking bills of exception, controversies frequently arose as to the precise language employed in verbal instructions. It may perhaps have been to prevent such controversies, that the clause in the constitution referred to was

framed. Be this as it may, we have no statute nor are we aware of any absolute rule of practice, requiring the judge to permit the jury to take with them, when they retire to make up their verdict, the instructions of the court. We think it a matter of discretion with the judge. If he does not, for any cause deemed sufficient, permit the jury to take them, and they fail to remember them, or are in doubt about them, they can require the officer in charge of them to conduct them into court, and ask that the instructions, or any part of them, be repeated to them. Gantt's Dig., sec. 1943.

XXI, XXII. The twenty-first ground assigned in the motion for a new trial is:

" That in the record and proceedings of this cause, there is manifest error in the action of the court in the returning of the verdict by the jury."

And the twenty-second is:

" And because said proceedings and verdict of the jury are in utter violation of law."

The record shows that the jury were conducted into court by the bailiff in charge of them, and in the presence of the appellant and his counsel, delivered the verdict copied above. That they were polled at the request of appellant, and severally assented to the verdict.

The record also shows that Wm. A. Hunter, one of the jurors, on being called from a list of jurors in which his name had been incorrectly written Hunten instead of Hunter, stated his true name to be Hunter; and it appearing to the satisfaction of the court that said Hunter belonged to the original panel of jurors for the term, that the ticket on which his name was written before drawing contained his proper name, and that by a clerical misprision his name was written, in an entry of the proceeding of Sept. 29, 1870, Hunten; on motion of the state, the entry was corrected by inserting his proper name.

In all this we see no irregularity of which the appellant had any cause to complain; nor in the whole record do we find any error for which the judgment should be reversed.

The judgment must be affirmed, and its affirmance properly certified to the court below and to the Governor of the state.