## VAUGHAN v. STATE.

### Opinion delivered January 13, 1894.

1. *Examination of juror—Discretion of court.*
   The court, in its discretion, may re-examine a juror touching his qualifications, after he has been accepted as a member of the jury.

2. *Rejection of juror—No prejudice.*
   Erroneous rejection of a talesman is not sufficient cause for granting a new trial.

3. *Instruction—Defendant as witness.*
   The court charged the jury as follows: "The defendant has the right to testify in his own behalf; but his credibility, and the weight to be given to his testimony, are matters exclusively for the jury. In weighing the testimony of the defendant in this case, you have a right to take into consideration his manner of testifying, the reasonableness or unreasonableness

| | |
|---|---|
| 58 | 353 |
| 59 | 426 |
| 58 | 353 |
| 60 | 88 |
| 60 | 342 |
| 60 | 407 |
| 60 | 556 |
| 58 | 353 |
| 61 | 102 |
| 61 | 174 |
| 62 | 208 |
| 62 | 537 |
| 62 | 554 |
| 58 | 353 |
| 63 | 175 |
| 63 | 311 |
| 63 | 585 |
| 58 | 353 |
| f69 | 561 |
| 58 | 853 |
| e70 | 306 |
| e70 | 307 |
| 58 | 353 |
| 73 | 410 |
| 74 | 258 |
| 74 | 288 |
| 74 | 358 |
| 76 | 280 |
| 77 | 336 |
| 58 | 353 |
| f78 | 38 |
| f78 | 293 |
| 58 | 353 |
| 84 | 180 |
| 58 | 353 |
| 90 | 517 |

of his account of transactions, and his interest in the result of your verdict, as affecting his credibility. You are not required to receive blindly the testimony of the accused as true; but you are to consider whether it is true, and made in good faith, or only for the purpose of avoiding conviction." *Held*, that the charge is objectionable, but not ground for reversal.

4. *Accomplice—Corroboration.*

The corroboration of an accomplice, required by the statute (Mansf. Dig. sec. 2259), must relate to material facts which go to the identity of defendant in connection with the crime; hence, it is proper to refuse to charge that if the testimony of a witness shows him to be an accomplice, the jury should not convict, unless his testimony is corroborated by testimony they believe to be true, beyond a reasonable doubt.

5. *Power of court to limit argument.*

While it is the better practice to advise counsel, before the argument begins, of the limit of time for argument, it is not error, where defendant's attorneys have already occupied eight hours in argument, to notify the attorney who closes for the defense, after he has spoken for three hours, that he will be limited to twenty minutes longer; it not appearing that defendant was prejudiced thereby.

6. *Remarks of prosecuting attorney—When not prejudicial.*

A remark by the prosecuting attorney, in his closing argument on a trial for murder, that "no innocent man was ever yet hung; and if the jury wrongfully convicted the defendant, he had a right to appeal to the Supreme Court, who would rectify the wrong," though improper and unwarranted, was not prejudicial, since the first part was a mere matter of opinion, and the latter part must have been known to every intelligent juror.

7. *Evidence—Former testimony of witness out of jurisdiction.*

The testimony of a witness given on a former trial may, in the discretion of the court, be admitted in evidence, although no subpoena has been issued for him, if two witnesses testify that they have been informed by his relatives that the witness has removed to another State.

8. *Evidence—Exception must be specific.*

An objection to the admission of the testimony of a witness on a former trial, on the ground that a sufficient foundation had not been laid for its admission, will not be considered on appeal where no specific objection on that ground was made in the court below.

9. *Proving former testimony of absent witness.*

   A witness is competent to testify as to the testimony given ·by another witness on a former trial, although unable to give his exact words, if he is able to give the substance thereof.

Appeal from Washington Circuit Court.

EDWARD S. MCDANIEL, Judge.

STATEMENT BY THE COURT.

W. A. Gage was assassinated at his home in Madison county, September 26, 1891. He was fired upon by some one in ambush, as he was returning to his house from his horse-lot, and instantly killed. Tracks leading to and from the place of the killing were discovered. Those leading away were made by a person in sock feet. Those leading up to where the assassin stood were made with shoes having plates or irons upon the heels. The shoes of one Thomas Hamilton were compared with the tracks, and found to fit exactly; also, beggar's lice and red dirt were found upon his socks, corresponding to dirt of the same description in the field of the deceased— the way the party doing the killing had gone.

Hamilton was indicted as principal; the appellant, Vaughan, as accessory. Vaughan was suspected and arrested on account of the bitter animosity which he was known to have had against Gage growing out of a lawsuit which had been pending for years between them. Vaughan had sued Gage for something between twenty-five hundred and three thousand dollars, and had been heard, at different times and places, and by various witnesses, to express great hatred towards Gage. Had said "that Gage had treated him very bad, or very mean; that it was very hard to bear; that there were two ways a man could get him to kill him,—one, in self defense; the other, by treating him mean." Also, "that if Gage beat him in his suit, he did not know what he would do; that he thought he would leave the State; had never been fooled so badly by any man in his life."

And, again, "that he had decided in his mind that, if a man beat him out of his just rights, it would not do him any good; that there was old Andrew Gage, who owed him about twenty-five hundred dollars, and, if he beat him out of it, it should never do him any good." And, again, "that he sometimes thought that if it were not for his family, or Gage's family, before Gage should testify against him, he would take his gun and kill him." Other witnesses testified that appellant, after being arrested, and on his way to jail, when near deceased's house, fell off his mule, began crying, and said that he had just realized that he was charged with crime; that he regretted the thought of having to be taken among his old friends and neighbors, charged with killing as good a man as Mr. Gage." After Vaughan and Hamilton were lodged in jail, witnesses and letters were introduced to show that Vaughan endeavored to dissuade Hamilton from turning State's evidence, all of which will be set out fully in the opinion,

Hamilton, by an agreement with the States' attorney to the effect that he might plead to murder in the second degree, was permitted to testify. Omitting the details of the horrible crime, as given by him, his testimony was in substance : that he was in most distressed circumstances, his family sick, and he in want; that defendant Vaughan, at different times, when they were hunting together and on other occasions, talked to him about his trouble with Gage; said that Gage was going to swear him out of his money, if he was not removed, and that he wanted him, Hamilton, to do it, and would give him half Gage owed him, if he would kill Gage; said that Vaughan promised to let him have land to cultivate, furnish him a team, and give him all he could make; that he had nothing against Gage, but finally yielded to the requests of Vaughan, moved through his promises to pay him, and committed the deed, in the

manner above described, with a double-barrel shot-gun furnished him by Vaughan. Said that Vaughan planned the way for him to do the killing, and said he, Vaughan, would be suspected, but that he could prove that he was not there, and that he, Hamilton, would not be suspected.

The defendant, on his own behalf, denied all the statements of Hamilton, introduced witnesses to show his good character, and that Hamilton had made statements at different times "that he, Vaughan, had nothing to do with the killing." The above, together with the facts set out in the opinion, constitute the substance of the evidence upon which the State asked conviction.

The jury returned a verdict of guilty, and the case is here by appeal from judgment of death pronounced upon the verdict.

*J. D. Walker* for appellant.

1. The court erred in excusing the jurors Hailey and Dorman. Defendant's challenges were exhausted, and he should have had an opportunity of accepting these jurors.

2. No proper foundation was laid to admit the testimony of Thomas to prove what Hays had sworn to, and it was error to admit it. 33 Ark. 540.

3. It was not shown that Hays' presence could not be obtained, nor even that a subpœna was issued for him. Mansf. Dig. sec. 2149. Thomas did not testify that he could give the *substance* of the language of Hays on the former trial. It was not shown that Hays was *sworn* on the trial. See Gr. Ev. vol. 1, p. 240, and sec. 165 and notes ; 42 Iowa, 574 ; 18 Pick. 434 ; 11 Serg. and R. 149 ; 10 Ala. 260. A witness is not competent to prove the testimony of another unless he can state that he remembers the substance of all that was said, both on examination in chief and cross-exami-

nation.   11 Ala. 260 ; 63 Ga. 692 ; 42 Iowa, 573 ; 43 *id.*
177 ; 39 Md. 149 : 14 Allen (Mass.), 236 ; 18 N. H. 284 ; .
4 Jones (N. C.), 526 ;   11 S. & R.   (Pa.) 149 ; 97 Penn.
St. 420 ; 30 Am. Rep. 813 ; 7 Baxter (Tenn.), 80 ; 21 Vt.
378.

4.   The instructions in this case were *argumenta-
tive.*   It was error to *single out* the witness Vaughan, and
instruct the jury as to his credibility *especially.*   See 84
Ill. 99 ; 85 *id.* 612 ; 13 Ill. App. 557 ; 115 Ill. 628.   Nor
should an instruction single out and give prominence to
certain facts, ignoring other facts proved.   81 Ill. 478 ;
33 Mich. 143 ; 57 Mo. 138 ; 55 Mich. 139 ; 90 Ill. 612, 440.

5.   The jurors were *coerced* into a verdict by the
action of the court in directing them to retire after they
had reported that they could not agree.

6.   The eighth and tenth instructions given are not
full enough, and were unfair to defendant.   The corrob-
oration should be as to matters *material* to the issue.
Conduct that is susceptible of two opposite explanations is
bound to be assumed to be moral rather than immoral.   70
Ill. 484 ; 32 Ark. 239 ; 13 Mo. 379 ; 123 Mass. 222 ; 25 Am.
Rep. 81 ; 22 Pick. 397 ; 3 Rice on Ev. p. 513 ; 100 N. Y.
592 ; 44 Tex. 109 ; 9 Gray, 299 ; 10 *id.* 472 ; 12 Allen,
-183 ; 110 Mass. 104 ; 111 Mass. 411.   The instruction
should have been that the accomplice must be corrobo-
rated as to *material facts* tending to connect defendant
with the commission of the crime.   28 Hun, 589 ; *Ib.*
320 ; 53 N. Y. 474 ; 26 N. Y. 207 ; 55 N. Y. 645 ; 70 *id.*
38 ; 1 N. Y. Cr. Rep. 344.

7.   It was error to limit counsel in his argument.

8.   The prosecuting attorney's remarks in closing
were prejudicial to appellant, and their effect was not
removed from the minds of the jury.

9.   It was error to subject the juror Dowell to
another examination as to his relationship to defendant.

*James P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1. It is within the sound discretion of the trial court to excuse a talesman for any ground deemed sufficient. A defendant has no legal right to any particular juror. 29 Ark. 7 ; 30 *id.* 343 ; 35 *id.* 639 ; 44 *id.* 117.

2. As a foundation for the admission of Thomas' testimony as to what Hays testified on a former trial, it was proven that Hays testified that he had since removed out of the jurisdiction, and that Thomas was present and heard his testimony. The objection that such testimony is in violation of art. 2, sec. 10, constitution, has been often overruled. 22 Ark. 372 ; 29 *id.* 17 ; 33 *id.* 539 ; 38 *id.* 304 ; 40 *id.* 461 ; 47 *id.* 180. In order to admit such testimony, it is not necessary that the witness should be able to state what was sworn to *in ipsissimis verbis*, but it is sufficient to state the substance. 4 T. R. 290 ; 18 Pick. 438 ; 1 Gr. Ev. (14 ed.) sec. 165 ; 1 Bish. Cr. Pr. sec. 1196 ; 10 Serg. & R. 16; 29 Ark. 17 ; 31 Ill. App. 394. The record states that Hays "testified," which includes the idea of an oath in legal form. Burrill, L. Dic.; Bouvier, Law Dic. No specific objection to Thomas' testimony was made on this ground below, and a general objection will not be considered as extending to any matter of form or question of regularity. 29 Ark. 17 ; 18 *id.* 392 ; 27 *id.* 377 ; 32 *id.* 319 ; 50 Mo. 126 ; 25 Pac. Rep. 816 ; 9 So. Rep. 274.

3. The instruction as to an accomplice and the corroboration necessary to convict follows the statute, and was approved in *Vaughan* v. *State*, 57 Ark. 1. Mansf. Dig. sec. 2259 ; 40 Ark. 484 ; 50 *id.* 544 ; 36 *id.* 117.

4. The twenty-third instruction is not objectionable on the ground that it singles out Vaughan, and instructs the jury as to his credibility. By act March 24, 1885, the defendant is made a competent witness in his own

behalf.   If he takes the stand, he is on the same footing as any other witness.   56 Ark. 7 ;  46 *id*. 141 ; 95 Ill. 407 ; 105 *id*. 414 ; 42 N. Y. 265.   See also 49 Ill. 400 ; 19 Nev. 135 ; 16 *id*. 310 ; 34 Cal. 191 ; 60 *id*. 142 ; 60 Cal. 142 ; 54 Ark. 498.

Wood, J., (after stating the facts.)  Fully appreciating the importance of this case, and the consequences to the defendant of an affirmance of the judgment, we have given every assignment of error presented by this record our careful consideration.   Some of them have been of easy solution, on account of the former adjudication of this court in this case upon the same questions, and by reason of the long and well established doctrine announced by it upon similar questions in other cases.

1.   The first and last assignments, in the order presented by counsel, complain of errors in impaneling the jury.

A talesman, having no excuse to offer, and being otherwise qualified, was, upon the suggestion of the prosecuting attorney, asked by the court if he was a dealer in " hop tea," and replied that he had been employed in that business ; had been tried, acquitted, and had quit the business, and was now running a restaurant.

Another talesman gave to the judge his excuse on the outside of the court-house, and when the judge went upon the bench, and this talesman's name was called, he was sworn and shown to be qualified, but, on reminding the court that he had already given his excuse, was ordered to stand aside, the court stating that the judge had heard the juror's excuse on the outside of the court-house.

After a juror had been selected, the court permitted the prosecuting attorney to again examine him as to his relationship to appellant, in the presence of six other jurors who had also been accepted, and divers talesmen who had been summoned.   The district attorney was

not satisfied with his answers, and asked that he be excused for cause. The court refused. Appellant saved an exception to this re-examination of the juror.

From our standpoint of observation, looking down upon this record, we are unable to see why one who had been a dealer in "hop tea," but had quit the business, was for that reason disqualified for jury service. Repentance and reformation seem to have taken place, and it appears to us the past should have been forgotten. But the trial judge was in closer touch with the juror than we ; he could look upon his face, hear his answers, and observe his general make-up and mannerism. However arbitrary such a ruling may seem to us, looking upon the "cold type," it may not in fact have had that character at all, could we have seen the talesman as he appeared and made answer in the court below. The judge alone is to receive excuses for not serving on the jury, and excusing the juror who had made known his excuse on the outside of the court house does not appear so irregular.

The examination of the juror who had already been accepted was eminently proper, at that stage of the proceedings. Upon suggestion from any proper source that the juror had not understood, or was mistaken in his examination, it was the duty of the court to have him re-examined. If appellant conceived that he was prejudiced by such proceedings, he should have objected to the juror. He did not join in the protest of the prosecuting officer to this juror's remaining in the panel, and we presume he was satisfied with him.

1. Discretion of court as to examination of juror.

As to the rejection by the court of the talesmen in the above manner, we deem it most conducive to the ends of justice to adhere to the rule, long ago announced by this court, that "the erroneous rejection of a talesman is no sufficient cause for granting the appellant a new trial. He had no legal right to any particular person as

2. Rejection of juror not prejudicial.

a juror." *Hurley* v. *State*, 29 Ark. 17; *Benton* v. *State*, 30 Ark. 343; *Wright* v. *State*, 35 *ib.* 639; *Lavender* v. *Hudgens*, 32 *ib.* 763; *Maclin* v. *State*, 44 *ib.* 115. But while it would be almost a travesty upon our criminal jurisprudence not to have the circuit court vested with some such power to purge the jury box from designing and incompetent persons; yet the very fact that they do have such unlimited judicial discretion calls for the utmost caution in its exercise, that all things may be in fact, as they are presumed in law, rightly and solemnly done in courts of justice.

3. Instruction relating to defendant's testimony considered. 2. The second, third, fourth, fifth, sixth and seventh grounds of the motion for a new trial relate to alleged errors in instructions given, and requests for same refused. This instruction was asked: "I charge you that the defendant is a competent witness in his own behalf, and his testimony is subject to the same rules and tests as that of any other witness." The court refused this, and gave the following: "The court instructs the jury that, under the law, the defendant, Samuel Vaughan, has the right to testify in his own behalf; but his credibility, and the weight to be given to his testimony, are matters exclusively for the jury. In weighing the testimony of the defendant in this case, you have a right to take into consideration his manner of testifying, the reasonableness or unreasonableness of his account of transactions, and his interest in the result of your verdict, as affecting his credibility. You are not required to receive blindly the testimony of the accused as true; but you are to consider whether it is true and made in good faith, or only for the purpose of avoiding conviction." Counsel contend that this instruction was objectionable, as argumentative; that, in naming the defendant, it gave undue prominence to the interest he had in the cause, and was couched in such language as tended to discredit him before the jury. In the consid-

eration of this instruction, fairness to the court below requires that we state the following, which was also given: "The court tells the jury that nowhere in these instructions does the court mean that you are to disregard the testimony given by any witness in this case. That is a matter solely with the jury, and it is not within the province of the court to tell the jury what weight you should give to the testimony of any witness."

The court also gave the usual general charge on the credibility of witnesses. This was sufficient to cover the case of the defendant, and all the other witnesses, except the accomplice ; a special instruction being necessary in his case, because the statute requires that his testimony be corroborated.

It was not error to refuse the instruction, in the form asked by appellant. It was not necessary to tell the jury that the defendant was a competent witness. The court would not otherwise have permitted him to testify, and when he went on the stand and testified, that fact informed the jury that he was a witness. But, since the court embodied the idea asked by appellant in the first part of the instruction it gave, it was also proper to add the succeeding part. The instruction, when standing alone, cannot be reasonably and fairly construed as tending to discredit the defendant's testimony before the jury. But, when taken in connection with the one following it, every possible or imaginary objection is removed. The law, as announced in this instruction, has been approved by the supreme courts of other States. In some States, instructions on the defendant's testimony, by reason of their peculiar phraseology, are open to much stronger objection than the one we are now considering. For example, the Supreme Court of Michigan approved this : "Now, I am asked to charge you, gentleman, that you are to consider the

testimony of this defendant just as you would the testimony of any other witness—give it the same consideration. I cannot charge you, gentlemen, that you are bound to give the same weight to it that you are to that of a disinterested person. This man testifies as defendant, himself deeply interested, and has a motive for committing perjury or perverting facts which the other witnesses have not. It does not follow, therefore, that you must give the same weight to his testimony that you do to the testimony of any other witness, whether corroborated or uncorroborated.''

Justice Morse, commenting upon this said : '' The remarks of the court in relation to the weight of this testimony, as compared with witnesses not so deeply interested as the respondent in the issue of the trial, and his statement that it did not follow that the jury must give the same weight to respondent's testimony that they might to other witnesses, was, in effect, nothing more than calling their attention to the fact that in weighing his testimony they should consider his interest in the case, and the motive he might have for not telling the truth. It was just and proper, in view of the request he had given, in which no distinction was made between respondent's testimony and that of any other witness, that the jury should be instructed that in weighing and determining its truth they should take into consideration the interest he must necessarily have in the result of the trial.'' We do not quote the above instruction of the Michigan court with the view of approving it in the language in which it is drawn, but only to show what courts of high authority have laid down as the law upon this subject. A comparison of the instruction in this case with the one given in the Michigan case, and with those given in other States, will show, how much less susceptible it is to the objections urged against it than some on same subject approved

by courts of highest respectability. See the following as supporting the view of the law we have taken. *People* v. *Calvin,* 60 Mich. 123 ; *State* v. *Hing,* 16 Nev. 310 ; *People* v. *Cronin,* 34 Cal. 191 ; *People* v. *Morrow,* 60 *ib.* 142 ; *People* v. *Petmecky,* 99 N. Y. 422 ; *People* v. *O'Neal,* 67 Cal. 378 ; *Rider* v. *People,* 110 Ill. 11 ; *People* v. *Wheeler,* 65 Cal. 77 ; *Hirschman* v. *People,* 101 Ill. 568 ; *State* v. *Sterrett,* 71 Iowa, 386 ; *People* v. *Knapp,* 71 Cal. 1 ; *State* v. *McGuire,* 69 Mo. 197 ; *State* v. *Wisdom,* 84 *ib.* 190 ; *State* v. *Elliott,* 2 S. W. 411 ; *State* v. *McGinnis,* 76 Mo. 326 ; *Creed* v. *People,* 81 Ill. 565 ; *Haines* v. *Territory,* 13 Pac. Rep. 8 ; 2 Thompson on Trials, sec. 2445, *et seq.; Bulliner* v. *People,* 95 Ill. 406.

It is proper for the jury, in considering the weight to be given to the testimony of the defendant, to consider the interest he has in the result of the suit. Nor should they receive it blindly as true, but consider whether it is true and made in good faith, etc. Because of the difficulty, however, in so framing an instruction, where the defendant's name is mentioned at all, as not to give his testimony undue prominence, either for or against him, it would be better for trial judges to let him pass, with all the other witnesses, under the purview of a general charge as to the credibility of all the witnesses, leaving to the attorneys in argument to call the attention of the jury to any peculiar facts applicable to any particular witness.

The eighth instruction, in reference to the corroboration of an accomplice, follows the statute (Mansfield's Digest, sec. 2259), and is in the form approved by this court in other cases. *Hudspeth* v. *State,* 50 Ark. 544 ; *Polk* v. *State,* 40 Ark. 484 ; S. C. 36 *id.* 117 ; *Vaughan* v. *State,* 57 Ark. 1. The corroboration must be something more than "to merely show that the offense was committed, and the circumstances thereof." He must be corroborated by other evidence *tending to connect the*

4. As to corroboration of accomplices.

*defendant with the offense.*   Facts that go to the identity of the defendant in connection with the crime—that tend to connect him with it—would be *material*, and if the accomplice is corroborated as to these, it is sufficient. That is all the instruction says, and it is correct.   *People* v. *Courtney*, 28 Hun, 589.

The appellant complains, also, that the court did not give this:  ''If the testimony of a witness shows him to be an accomplice, the jury should not convict unless his testimony is corroborated by testimony they believe to be true, beyond a reasonable doubt.''   This was not only incomplete, but radically wrong, and, had it been given, would have been inconsistent with the one we have just considered, and highly prejudicial to the defendant.   The converse of it would be that if the testimony of a witness shows him to be an accomplice, the jury *should convict*, if his testimony was corroborated by evidence which they believed to be true beyond a reasonable doubt.   To have given this would have been ignoring the statute which requires the corroboration to be of matters *tending to connect the defendant with the commission of the crime.*   The accomplice may have been corroborated as to many other things, and in many other ways, but this was the all important thing—the ''*sine qua non*'' to conviction.

The refusal of the court to give instructions on circumstantial evidence was not error.   This was not a case depending upon circumstantial evidence.   The State was not asking for a conviction upon circumstantial evidence.   Nor was it asking conviction upon the testimony of Thomas Hamilton alone, but upon *his testimony in connection with all the other evidence.*   The court did right in not leading the jury away into a maze of confused issues.

The refusal to charge the jury '' that, before they were authorized to convict, *each* juror must be sat-

isfied beyond a reasonable doubt, as explained in the instructions, of the guilt of accused, etc.," was not error. The oath the jurors took required that "*each* should well and truly try," etc. If appellant's counsel were not satisfied that the verdict was the verdict of each juror, it was their province, under the statute, to assure themselves of that fact by having the jury polled. Mansf. Dig. sec. 2294.

Likewise, it was not error to refuse to tell the jury "that if they believed the statements of a witness to be wholly untrue, such statements should be considered as though not made before them." The court had already fully charged the jury on the "credibility of witnesses and the weight to be given to their testimony."

3. One of the appellant's counsel, while making the closing argument, after having spoken three hours, was by the court interrupted, and told that he must conclude his argument in twenty minutes, which he did. Eight hours were consumed by himself and associates in the argument for appellant.

5. Discretion of court to limit argument.

It is not shown that, by reason of this interruption, the counsel was precluded from covering the whole case. What particular points he was prevented from making do not appear. The court may, in its discretion, limit the argument; but, in capital cases especially, it is a discretion which circuit judges generally hesitate to exercise. When counsel are limited, we suggest the better practice is to have them advised of that fact before the argument begins, and of the time which they will be allowed to consume, in order that they may the more easily arrange the line of their argument in a systematic way. In this case, however, after three hours had been taken by counsel, it may fairly be presumed that the court saw that twenty minutes would be ample time in which to say everything necessary for his client's cause that had not already been said. In the absence

of any affirmative showing as to *how* appellant was prejudiced, we hold that the trial judge did not abuse his discretion. *Dobbins* v. *Oswalt*, 20 Ark. 619; *Edwards* v. *State*, 22 *id.* 253; *Ford* v. *State*, 34 *ib.* 650; *Winter* v. *Bandel*, 30 *id.* 362.

**6. When prosecuting attorney's remarks not prejudicial.**

4. The prosecuting attorney in his closing argument used this language: "No innocent man was ever yet hung; and if the jury wrongfully convict the defendant, he has a right to appeal to the Supreme Court who will rectify the wrong." A bridle should be put upon the tongue of an attorney, promptly and firmly, by the court, and upon its own motion, whenever he makes the first break across the record boundary. The court, in its sound discretion, should suit the character of restraint to the exigencies of each particular case as it arises, using mild admonition, harsh rebuke, or fine and imprisonment as for contempt, according as the transgressor may be submissive or recalcitrant; but in no case should the court fail to act at once. If something has been said before the judge had the opportunity to check its utterance, then the statement should be challenged by the court, and removed from the jury with such comment as the circumstances demand. If zealous counsel cannot find sweep for their genius or eloquence within the record, they should not be permitted to enjoy that privilege, to the prejudice of the rights of the opposite party, by going beyond it. This court has already strongly inveighed against such conduct, when indulged by counsel and permitted by the court, in *L. R. & Ft. S. Ry. Co.* v. *Cavanesse*, 48 Ark. 106; and whenever it occurs to us that any prejudice has most likely resulted therefrom, we shall not hesitate to reverse on that account. The remarks of the prosecuting attorney, while improper and unwarranted, were not prejudicial, as we take it, since the first part of it was mere matter of opinion, and the latter part, as to the right of appeal,

must have been already known to every intelligent juror.
The right of appeal, as a part of the procedure under our
judicial system, is a matter of common knowledge.   The
judge, moreover, very properly told the jury that even
this right was not a proper subject for discussion before
them.   We can not conceive that any man with sufficient
intelligence to be a competent juror could have been in-
fluenced by such a remark to do injustice to the appellant.

5.   The only remaining question for our considera-
tion is presented by the twelfth ground of the motion
for a new trial:   "That the court erred in permitting
the testimony of W. W. Thomas, stating as to the tes-
timony of one James Hays."   The bill of exceptions
shows that one Lee Elliott testified:   "I am clerk of
the circuit court of Madison county, and reside at Hunts-
ville.   Jim Hays is in Texas, his relations say.   I don't
know where he is.   He used to live in Huntsville, or near
there.   He has a mother there.   Think he has a family.
My understanding is that he moved with his family to
Texas.   I went to Huntsville in October last.   Think he
was gone before I got there."   Also William Brooks
testified:   "I knew Jim Hays.   He resided in Hunts-
ville, Arkansas, until he moved away, since the last trial.
My understanding is he is in Texas.   He had a wife and
child.   They have moved away.   His mother, sister and
brother live in Huntsville.   I live just across the street
from where his mother lives.   They say he is in Texas.
He left after the other trial in this cause, and I have
never seen him since he moved away."   Plaintiff then
introduced one W. W. Thomas, who, over the objection
of defendant, testified that he was on the jury that tried
Vaughan in the trial in this court a year ago.   Jim Hays
on the trial testified that he had guarded Vaughan
and Hamilton during two terms of the Huntsville court.
Went in one night, and asked if they were all asleep.
Vaughan said 'No, Hamilton is sick.'   He had previously

*7. Admissi-
bility of proof
of testimony
of absent wit-
ness.*

stated that he had asked if they were all dead. That he, (Hays,) said to Vaughan: "If he is dead, you are flying." That he (Vaughan) told him to seek a private interview with Hamilton, and tell him not to give anything away; that it would be better for both of them. And, on cross-examination, witness Thomas testified that Hays, in his cross-examination, said *that he had the thing tangled up in his testimony; said he had guarded at two courts, Spring and September terms.* Thereupon, defendant's counsel read from the bill of exceptions in the cause on the former trial, from Hays' testimony, the following words: "You have got me bothered. I don't know whether I guarded him at the September term or not," and asked the witness Thomas if Hays did not so testify on said trial, and witness Thomas answered: "I do not remember all that was said. He might have said so." (To all of the testimony of witness Thomas as to the testimony of Hays on the former trial, defendant objected, and asked that same be excluded from the jury; but the court overruled his motion, and he at the time excepted.")

The questions raised by this assignment have been strongly pressed upon the court, and ably argued by counsel, both orally and in their briefs. While appreciating the great force in what is said about such testimony being in violation of art. 2, sec. 10, of the constitution, giving to the accused the right "to be confronted with the witnesses against him," we hold that former decisions of this court correctly declare the doctrine upon that subject. It is an old question, and has been often passed upon. The settled law of this State is that where the adverse witness is dead, beyond the jurisdiction of the court, or, upon diligent inquiry, can not be found, what such witness testified on a former occasion on the same issue, and between the same parties, may be given in evidence, provided the accused was present

having the right of cross-examination. 1 Greenleaf on Ev. sec. 163. This doctrine was announced by this court long before the constitutional provision cited *supra* was engrafted, and has been several times followed since. *Pope* v. *State*, 22 Ark. 372; *Hurley* v. *State*, 29 *id*. 17; *Shackelford* v. *State*, 33 *id*. 539; *Green* v. *State*, 38 *id*. 304; *Dolan* v. *State*, 40 *id*. 461; *Sneed* v. *State*, 47 *id*. 180; 1 Gr. Ev. sec. 163 and authorities cited.

Did the State lay a sufficient foundation for the introduction of this secondary evidence? In the case of *Railway Co.* v. *Henderson*, 57 Ark. 402, Mr. Justice Mansfield, delivering the opinion of the court, said that " some discretion must be allowed to the trial court in deciding whether proof offered as preliminary to the introduction of such evidence is sufficient to admit it as in case of the witness' death." We think the court evidently intended to announce that the trial court had discretion, which was only limited to the extent that it should not be abused. It is absolutely essential that circuit courts be vested with such discretion. The judge is acquainted with the surroundings, sees and hears the witnesses, and is *the one* to be satisfied as to whether the conditions exist calling for the introduction of secondary evidence. Since its admission under any circumstances, however, is an exception to the rule rejecting hearsay evidence, and has its origin *ex necessitate* in the administration of justice, the court should proceed cautiously, and avoid capricious conclusions. Its judgment should be based upon investigations reasonable and satisfactory. It should have diligent inquiry made, or be satisfied from competent proof that inquiry would do no good. When it appears to us that such has been the course of the trial judge, we will not review his discretion to disturb his findings upon the facts before him. If the law requires certain fixed and unbending rules to be observed by the circuit judge in laying foun-

dation for the admission of secondary evidence, then he has no discretion in the matter, and in no case is authorized to admit it until these rules have been complied with. The trial judge should base his conclusions upon competent and relevant testimony, but its sufficiency is within his discretion, subject to be reviewed and corrected when abused.

Did the court abuse its discretion? We think not. It had the county clerk called, living in the town where the witness Hays last resided, acquainted with Hays and his family. The clerk went to Huntsville in October, and Hays, he thought, was gone before he got there. Something about nine months he had been gone from his old home, according to this witness. His understanding was that Hays was in Texas. His relatives said he was in Texas. Did not know where he was. The court also called Mr. Brooks, his neighbor, living just across the street from his mother, who swore that Hays moved away since last trial. That occurred at the spring term, 1892, and the present trial at the spring term, 1893. So, according to this witness, Hays had been gone about a year. His wife and child had moved. His relatives said he was in Texas. The understanding of this witness was that Hays was in Texas. The answers of these witnesses indicate that they had made inquiry, or received information which made inquiry unnecessary. What was the necessity for stopping the proceedings and sending the sheriff or others to inquire of Hays' relatives at his old home? Here were credible witnesses who had already inquired, or been informed by those most likely to know, of the witness Hays' whereabouts. It will not be contended that inquiry on a subject like this—the efforts made to ascertain the whereabouts of a witness—is not original evidence. 1 Greenleaf, Ev. sec. 163, note 2. If the sheriff, with a subpœna, for instance, did not know where the witness was, how would he

ascertain without inquiry, and what would be the use of inquiry unless he were permitted to report the result of his investigation? True, the issuance of a subpœna and the return of the sheriff's "*non est*" would have been more convincing, perhaps, and if the court had not been already satisfied from the testimony of these neighbors of Hays, and the surroundings, that it would have been a useless consumption of time, it would doubtless have suspended the trial, and sent a subpœna to the sheriff of Madison county. But the judge evidently concluded that he would only get the same information he already had from the clerk of that county. The court had the discretion to pass upon the sufficiency of this evidence, and we can not say that there was an abuse of it. Rice on Evidence, sec. 226.

But if the foundation, as thus laid, was not suffi- 8. Exception cient, appellant interposed no specific objection to it in to evidence must be the court below. Had the court's attention been called specific. to it at the time as insufficient, it might have been an easy matter to have had additional evidence on the subject. This court has often ruled that a general objection is not sufficient except as to competency or relevancy. The appellant's counsel made a general objection to Thomas testifying. Under this general objection, the court would not know whether appellant was objecting (1) for the constitutional reason above vigorously insisted upon, that he had the right to confront; or (2) for the reason that the witness had not first stated that he could give the substance of all the witness Hays testified to on the former trial, which is also insisted upon here, and which some of the authorities hold is necessary to lay the foundation; or (3) for the reason we have just been discussing, that the witnesses called had not laid sufficient foundation. These three objections would be included in a general objection of that kind, and, no special objection being taken at the time to the

sufficiency of the foundation, the court may well have concluded that all objection on that point was waived, and that appellant was relying upon one or both of the others. Appellant should have been ingenuous and fair to the court, "laying his finger" upon the particular point in the court below which he is insisting upon here. *People* v. *Manning*, 48 Cal. 335. For the same reason, the objection that it is not shown that Hays was sworn on the former trial can not avail him here. (But Thomas says Hays "*testified*," which would seem to indicate that he was sworn.) See *Hurley* v. *State*, 29 Ark. 17; *Blackburn* v. *Morton*, 18 *id.* 392; *Blunt* v. *Williams*, 27 *id.* 374; *Coughlin* v. *Haeussler*, 50 Mo. 126; *Rush* v. *French*, 25 Pac. Rep. 816; *Giddens* v. *Bolling*, 9 So. Rep. 274; *Camden* v. *Doremus*, 3 How. (U. S.) 515.

But, for a still stronger reason, we do not think this case should be reversed, because of the introduction of the testimony of Hays through Thomas. There was ample proof in the same trend and to the same effect. The object of this testimony, of course, was to show that Hamilton and Vaughan were coadjutors, conspirators in crime, and that the controlling spirit who had planned the murder was now attempting to close the mouth of his pliant tool, and thus suppress most damaging testimony against himself.

What means the following testimony on behalf of the State? W. B. Pope: "I am the United States jailor at Fort Smith. The defendant and Hamilton have been in my custody for some time. I saw the letters in the custody of Hamilton one morning, and after that I was informed that the defendant wanted to see me. In the evening of the same day I saw him, and he asked me if I was working for a fee. I said "No," and he told me that if I was I could get one; that I could get those letters from Hamilton; that all I would have to do would be to ask Hamilton for them, and he would pay me to get them.

He said that Hamilton had written him letters, and he had either destroyed them or sent them back. I told him that he was the biggest fool I ever saw, and he said that he had made a mistake."

W. V. D. Hamilton: "I am the father of Thomas Hamilton. On the morning after the killing, about ten o'clock, and before I had heard of it, I met a little son of Thomas Hamilton, who said that his father had been arrested and taken to Huntsville, and his mother wanted me to come to her house. I stopped at the defendant's until the boy could get my horse. The defendant called me to one side, and asked me if I was going to Huntsville. I replied affirmatively, and he took me out by the side of the smoke-house and told me to tell Tom not to tell anything; that they would try to get him to turn State's evidence, but not to do it. He told me to try to get a private conversation with him, and said that if I could not do that, we would have to try some other plan. I did not know that the defendant was suspicioned at the time. He had not been arrested, and I had not told him that Tom had been arrested and carried to town, or that Gage had been killed. Miss Mollie Stringfield was boat-riding on the creek with one of the defendant's boys as I went to the defendant's house. She came in after the conversation alluded to."

The following letters, written by the defendant to Thomas Hamilton while in the United States jail at Fort Smith, were given in evidence: "Tom: Bill Roberts, of Huntsville, told me that he would be down here the first of next week, and Wythe Walker said that he would come whenever I wrote to him to come. He lives at Fayetteville. You said that you were not able to hire a lawyer. Now, you know that it will not do for me to hire a lawyer for you; but if I can get out, I can see your father, and have him to hire one for you, and me and him can fix that. But if you was to indict me, I

would have to hire a lawyer for myself; but if you clear me, then I can get out and work for you. And now I want to know for certain if you are going to clear me, for my lawyers are afraid to talk to you until they know for certain what you are going to do. They don't want to talk to you very much while I am here; it would look like we were working a trick. The statement that you give is very good, but it would have been best for you to write it like it was the first writing that passed between us after we got here, and just said: 'Sam, I heard that you sed that you did not want to ever speak to me any more, but I am getting sorter over my scare now, and I am sorry that I told what I did, but they had me scared and I don't know what I did say. I node you did not hire me to kill Gage, and I did not think that you had anything to do with it, but I node that you and Gage was at outs, and I thought it was the best thing that I could tell to save my life.' Now, Tom, if you will write something like this, and then go on just like you did in the other, and tell that they was around you with their guns, and you thought they would kill you, and tell me all that Lowery and the others said, just like you did in the other statement, and when this is done, you need not be uneasy but what you will get a lawyer. If you write this statement, sign your name to it, and it will be only used for our good. Be sure and send this back. Everything will work right if we will keep things still. So be careful. Write the statement on a piece of paper to itself."

"NOVEMBER 2nd, 1891.

" T. E. HAMILTON,

" *Sir:*—I am looking for Bill Roberts here to-day, and I want to know if you are willing to go to Fayetteville, and testify that if I had anything to do with the killing of Gage, that you don't know it, and that you made the statement that you did to save your life, and I

have got to believing it, and I think others will believe it. Write me at once and be careful.     Send this back.

"S. F. VAUGHAN."

It may, with truth, be said that the testimony of W. V. D. Hamilton is under a cloud.  But the testimony of the Fort Smith jailor is not.   The testimony of Hays and the testimony of the Fort Smith jailor are denied by the defendant.   The letters he wrote were admitted by him.   His denials and explanations were all for the jury.   But we cannot see how it can be contended that the testimony of Hays was prejudicial, when there was so much here *of his own*, *admitted*, from which the jury were justified in coming to the same conclusion that Hays' testimony was calculated to produce.

Thomas did not say he could give the substance of all Hays' testimony in so many words, but that is not necessary where the witness shows *he is giving it in substance*.   The record shows that Thomas testified : "I was on the jury that tried Vaughan in this court a year ago.   Jim Hays on the trial *testified*," (then proceeding to give his testimony).   This seems to indicate that he was giving the testimony at least in substance, if not almost *in ipsissimis verbis*.   Appellant does not show that Thomas did not give it in substance, while the subject-matter and manner of his testifying indicate that he did.   On cross-examination, in answer to the question, "If Hays did not say, 'I don't know whether I guarded him at the September term or not?'"  Thomas answered "that he did not remember all that was said by Hays ; that he might have said so."  From this, appellant argues that the witness shows that he did not remember the substance of Hays' testimony.   We do not so consider it.   He had already stated, in his examination in chief, that Hays testified "that he had the thing tangled up in his testimony ; said he had guarded at two terms of court, Spring and September terms."   We

9.  Mode of proving former testimony of absent witness.

think the answer he gave to appellant's counsel indicates that he meant to say that he did not remember what Hays said, in his exact words, about the particular matter of which counsel was inquiring, and not that he did not remember the substance of his whole testimony in the case. Mr. Greenleaf states the correct rule, supported by nearly all the American courts, as to what a witness called to testify as to what another witness said on a former trial, must be required to state, namely : "It seems, therefore, to be generally considered sufficient, if the witness is able to state the *substance of what was sworn on the former trial*." 1 Greenleaf, sec. 165, and authorities cited in note ; *Wade* v. *State*, 7 Baxter (Tenn.), 80 ; *Hepler* v. *Bank*, 97 Pa. St. 420 ; 2 Whart. Ev. sec. 1109 ; *Graffenried* v. *Kundert*, 31 Ill. App. 394. The testimony of Thomas in the manner given does not contravene this principle.

For the reasons given, to hold the testimony of Thomas as to Hays' evidence on the former trial inadmissible or prejudicial, in our opinion, would be hampering the trial judge in the exercise of a sound discretion by the refinements of judicial criticism, and preventing the application of a most excellent provision of the law in many cases by the merest technicality. This disposes of all the points raised and argued by counsel.

We think the ægis of the law has been held over every right of the appellant with a firm but impartial hand. The charge of the trial judge is too voluminous to copy into this opinion ; but it covers every phase of the evidence, and is remarkably fair to appellant. It clothes him with the presumption of innocence ; gives him the benefit of his good character ; hedges him round with the reasonable doubt, in several of the separate charges. It lays down proper criteria for the judging of his conduct ; tells the jury, in considering the weight and effect to be given to his acts, they should be mindful

of his mental and physical condition. It lays the testimony of the accomplice upon the most crucial ordeal known to the law, and defines proper rules for weighing the testimony of all the witnesses. The court below has held out a clean balance, perfectly poised. Appellant's case has been weighed, and he must abide the verdict of his peers and the judgment of the law.

Affirmed.

BATTLE, J., dissenting. The objection of the appellant to the introduction of the testimony of W. W. Thomas is attributable to the insufficiency of the foundation laid for its admission. This is the only ground in the record upon which it can be fairly based. In other words, the legal effect of the objection is that it was not shown that Jim Hays was absent from the State, or, after diligent inquiry, could not be found. I think it ought to have been sustained. Such testimony should be admitted with great caution, only from necessity, and to prevent a failure of justice. The necessity, whatever it be, should be clearly shown. *Harris* v. *State*, 73 Ala. 495. Allowing to the evidence which was adduced to show the admissibility of the testimony of Thomas the greatest weight which can be reasonably claimed for it, it proves no more than the removal of Hays from Huntsville, the place of his former residence, and that his relatives said that he had gone to Texas. The record fails to show that any subpœna was issued for him, that his whereabouts were unknown, or that he was out of the jurisdiction of the court. The statements of the relatives were incompetent evidence, and proved nothing ; and should have been disregarded by the court. They were competent to testify as to what they knew about his place of residence, and could not testify by proxy.

The material portion of the testimony of Thomas was that Hays testified in a former trial "that

Vaughan told him to seek a private interview with Hamilton, and tell him not to give anything away ; that it would be better for both of them." The father of Hamilton had testified to the same effect. But Vaughan testified that he made no such statement to the father. The testimony of Thomas strengthened the testimony of old man Hamilton, and tended to weaken that of Vaughan, and in this way was prejudicial to appellant.

As to the letters, Vaughan admitted that he wrote them, but testified that he did not write them until after Hamilton had written to him that he (Hamilton) knew that Vaughan had nothing to do with the killing of Gage ; and that the object of writing the letters was to get a statement for publication ; and that he, appellant, did not attempt to hire Pope to get the letters from Hamilton.

In this conflict of evidence I cannot find that the testimony of Thomas was not prejudicial to the cause of appellant. It appears in the bill of exceptions that the jury did not readily agree as to the effect of the evidence. They retired to consider of their verdict between four and five o'clock P. M. on May 13, 1893, and between ten A. M. and two P. M. on the 15th of the same month reported to the court that they were unable to agree upon a verdict, and that they did not disagree as to the instructions of the court or the testimony of witnesses, but as to the effect of the evidence. They were directed to retire and consider of their verdict, and thereafter, between four and five o'clock, returned a verdict of guilty. Under these circumstances, it seems to me that the introduction of the testimony of Thomas ought to be treated as prejudicial to the appellant.

I do not think that a reversible error was committed by giving the separate instruction as to the credibility of Vaughan as a witness, and as to the weight of his testimony, especially when taken in connection with other

instructions. But I do think the singling a defendant out and making his credibility the subject of a separate instruction may, in some cases, be highly prejudicial; and that the instruction as a precedent deserves severe condemnation, and that its repetition in the future should be avoided.

I concur with the court in the conclusions it has reached upon the questions decided, except as stated.

For the error indicated, I think that the judgment of the court below ought to be reversed, and a new trial granted.

MANSFIELD, J., concurs with me in this opinion.