## HUDSON v. STATE.

Opinion delivered December 23, 1905.

CRIMINAL PROCEDURE—ACCUSED AS WITNESS.—The accused has the right to testify, and the jury should give the testimony the same impartial consideration that they accord to the testimony of other witnesses. They are the exclusive judges of the weight of such testimony. They should not arbitrarily disregard what he testifies simply because he is the defendant, nor are they required blindly to receive a fact as true because he says it is true; but they are to consider his testimony in connection with the other facts in proof, in order to determine whether his statements are true and made in good faith, or made only to avoid conviction. In considering the degree of credit to be given it, they may take into consideration his appearance and manner while testifying, the reasonableness or unreasonableness of his statements, and his interest in the result of the verdict.

Appeal from Crawford Circuit Court; JEPTHA H. EVANS, Judge; affirmed.

### STATEMENT BY THE COURT.

The defendant, John Hudson, was indicted by the grand jury of Crawford County for the crime of murder in the second degree for killing John Colvard by shooting him with a pistol. On the trial the evidence showed that Hudson and John Colvard lived in the same house. They were both young men. Colvard was married, and Hudson was boarding with him. In October, 1904, they went in a wagon with one Steele to Alma. They each drank considerable whisky while there. On their return in the wagon with Steele each of them carried a quart bottle of whisky which he had purchased at Alma. Hudson's bottle cost one dollar, while Colvard paid one dollar and a quarter for the one he had. On their way home they both fell asleep. When they came near their home, they were aroused, and Hudson got possession of Colvard's bottle of whisky. They got into a quarrel about the whisky, and Hudson broke the bottle over Colvard's head, who in turn smashed the other bottle over Hudson's head. They commenced to fight, and fell out of the wagon with Hudson on top. He refused to quit when asked by Steele, and threatened to hurt Steele if he interfered. Steele, being old and feeble, went off to get help to separate them. He was unable to find any one

at first, and on returning to the wagon he found Colvard on top, pounding Hudson. Steele was still unable to separate them, and went off again. When he returned, Hudson was standing by the wagon; Colvard having left him and gone home. Both of them were badly bruised and beaten about the head and face. When Steele and Hudson came to the house, Colvard was in the yard, and his wife was washing the blood from his head.

Hudson, who had made some threat about shooting Colvard before he came to the house, walked into his room, and procured a pistol. Colvard's wife ran into the room, and grabbed the pistol, and began to struggle with Hudson for its possession. Colvard came into the room, and ordered Hudson to leave his wife, and struck Hudson on the side of the head with the blade of his pocket knife. Colvard and his wife then ran into another room of the same house where one Hobbs and his wife lived. Mrs. Hobbs was sick. Hudson came out with his pistol, and started towards the room where Colvard and his wife had gone. Hobbs came out and asked Hudson not to go into the room, saying that his wife was sick, and he was afraid that she would not live. Hudson replied that he would not hurt the women folks, and kept advancing towards the door, until Hobbs, fearing danger to himself, got out of his way. Colvard had some of Hudson's money in his possession. As Hudson came up to the door, the witnesses for the State say that Colvard came out of the door, caught Hudson's pistol with one hand, and shoved something at him with the other. One of the witnesses for the State said that it was money that Colvard handed to him, but Hudson, who testified in his own behalf, said that Colvard cut at him with a knife.

The witnesses for the State say that Hudson ordered Colvard back into the house, and that, as he turned to go, Hudson shot him in the back. Hudson testified that Colvard tried to cut him with a knife, that he told Colvard to go into the house, and that as Colvard turned to go in he shot him.

The court gave very full and fair instructions, among them the following:

"The defendant has the right to testify, and the jury should give his testimony the same impartial consideration that they accord to the testimony of other witnesses. They should not arbitrarily disregard what he testifies simply because he is the

defendant, nor, on the other hand, are they required blindly to receive a fact as true because he says it is true; but they are to consider his testimony in connection with the other facts in proof, in order to determine whether his statements are true and made in good faith, or made only to avoid conviction. The jury are the exclusive judges of the weight of such testimony. In considering the degree of credit to be given it, they may take into consideration his appearance and manner while testifying, the reasonableness or unreasonableness of his statements, and his interest in the result of the verdict. After a due consideration of his testimony, in connection with the other evidence in the case, they should give it such weight as they may deem it entitled to receive, their sole object being to ascertain the truth."

The jury returned a verdict of guilty of voluntary manslaughter, and assessed the punishment at six years in the State penitentiary. Hudson appealed.

*Robert L. Rogers, Attorney General,* for appellee.

RIDDICK, J., (after stating the facts.) This is an appeal by defendant Hudson from a judgment convicting him of manslaughter. While the killing of Colvard was the result of a drunken quarrel, in which he and defendant engaged, it is clear that the killing was not justifiable, and defendant was guilty of either manslaughter or murder. The instructions given by the court fully and fairly covered the law of the case. The instruction in reference to the testimony of the defendant follows very closely the law as stated by this court in *Hamilton* v. *State,* 62 Ark. 543. Beginning with the case of *Vaughan* v. *State,* 58 Ark. 353, this court has repeatedly held that it was within the discretion of a presiding judge to give such an instruction, when the defendant took the stand in his own behalf. *Vaughan* v. *State,* 58 Ark. 353; *Jones* v. *State,* 61 Ark. 88; *Hamilton* v. *State,* 62 Ark. 543.

We have not had the assistance of a brief by counsel for the defendant, but, after consideration of the transcript, we find no reversible error, and the judgment is affirmed.