MOTLEY v. STATE.

Opinion delivered December 16, 1912.

1.  HOMICIDE—INSTRUCTIONS—SELF-DEFENSE.—An instruction that the law of self-defense "begins in necessity and ends in necessity" was not objectionable as depriving the accused of the right to act in self-defense upon the appearance of danger to them where in several other instructions the jury were told that they had the right to act upon the appearance of danger to the extent of taking the life of deceased if they honestly believed, without fault or carelessness on their part in reaching such conclusion, that it was necessary for their defense.  (Page 613.)

2.  APPEAL AND ERROR—FAILURE TO BRING UP EVIDENCE—PRESUMPTION. —Where the trial court in a murder case admitted evidence of a statement by deceased as a dying declaration, and the record does not bring up all the testimony heard at the trial, it will be presumed that the proper foundation for the admission of the declaration was made before it was introduced.  (Page 614.)

3.  HOMICIDE—DYING DECLARATIONS—PROVINCE OF COURT AND JURY.—It was within the province of the court to determine the admissibility of dying declarations, and of the jury to weigh the circumstances under which they were made, and give them only the credit to which the evidence showed them entitled.  (Page 614.)

4.  TRIAL—IMPROPER ARGUMENT—PREJUDICE.—Where, in a murder case, the prosecuting attorney, in closing his argument, stated that Sam Prater, prior to making his dying declaration, signed an affidavit before a justice of the peace in which he swore that he had no knife at the time of the difficulty, and that both of the defendants cut him, and, upon objection being sustained, withdrew the remark and requested the jury not to consider it, the prejudice was removed.  (Page 615.)

Appeal from Madison Circuit Court; *J. S. Maples*, Judge; affirmed.

*Walker & Walker*, for appellants.

1.  The evidence does not sustain the verdict.  The appellants, under the evidence, acted clearly within their rights in justifiable self-defense.

2.  Instruction 8 was erroneous.  While it is admitted that the law of self-defense "begins in necessity and ends in

necessity," yet such necessity need not be actual, but may be apparent only.

3. The judgment should be reversed for the error of the court in permitting two witnesses to testify, without sufficient foundation being laid therefor, to alleged dying declarations of the deceased made on January 4, following the cutting on December 23.

Even if sufficient foundation had been laid, it was still error to permit testimony of the opinion of deceased that he was cut by both defendants. Dying declarations, to be admissible, must be of facts, not opinions. 1 Greenleaf on Evidence, § 159; Wharton, Crim. Ev., § 292; 39 Ark. 221. The general tendency is to a greater stringency, rather than to a relaxation, of the rule with reference to the admission of this character of testimony. 4 Enc. of Ev. 945, and cases cited in note; 146 U. S. 140; 99 Ala. 180; 105 Ga. 242; 31 Ind. 193; 7 Ia. 347; 97 Ky. 103; 75 Miss. 559; 80 Mo. 67; 35 S. C. 290; 9 Humph. 9.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. The verdict of the jury is equivalent to saying that they did not believe from the evidence that the killing was done in necessary self-defense—and there is ample testimony to sustain that finding.

2. There is no merit in appellant's objection to instruction 8. The concluding words of the instruction, as well as the language of other instructions, conveyed clearly to the jury the idea that the danger need not be real but might be apparent.

3. There was no error in admitting in evidence the statements of the deceased a short time before dissolution. 88 Ark. 579.

KIRBY, J. Appellants were indicted for murder in the second degree for the killing of Sam Prater, in Madison County, Arkansas, on December 23, 1911, by stabbing him with a knife. Upon trial, they were convicted of voluntary manslaughter, and their punishment fixed at two years each in the penitentiary. From this judgment they appealed.

It is contended for reversal: First, that the evidence is not sufficient to support the verdict; second, that the court

erred in giving instruction No. 8; and, third, because of the admission in testimony of the dying declaration of the deceased; also, because of improper argument of the prosecuting attorney.

The testimony tends to show that Sam Prater, the deceased, was drinking and quarrelsome on the evening of the difficulty, and had already had a fight with one Willard Patrick, who was a brother-in-law of Charley Vanbrunt, one of the appellants. During this difficulty, Charley Vanbrunt ran to one of the parties, who was trying to stop that fight, and caught hold of him, and said, "I am a friend of Willard Patrick and will fight for him," and was holding his hand at the time as though he had a knife in it. The man of whom he took hold said he was a friend of both parties, and if Charley was going to do any cutting he would help him, and drew his knife. The combatants made friends, and Willard Patrick went home, after inviting Sam Prater, who declined the invitation, to go to supper with him.

The first difficulty occurred in front of Barron's store and after it ended Patrick and Prater both passed around to the rear end of the store. Charley Vanbrunt went around that way with Tom Motley, Patrick invited Prater to supper with him and he declined to go, saying, he would "see him in hell first." Tom Motley then said to Prater, "Come on if you want to fight. There isn't but one of us." Charley Vanbrunt was with him at the time. Prater was following him, and, after the remark, walked up to Charley and drew his hand back as if to strike, and Charley threw his left arm up to ward off the blow, and said, "I don't want to fight." Tom walked between Charley and Prater, and Prater struck at him. Tom stepped back a step or two, and Ed. Landreth walked between them, and caught the lick on his left arm, and told them to "cut out the rowing." Sam hit Tom Motley on the head with his fist, and Tom fell to some extent and lost his hat. Landreth told Prater "not to start anything," and, as he was striking at Tom, caught his wrist and knew he had no knife open at all at any time during the fighting, and Motley said, "You hold him." This witness said he took hold of Prater, and Motley walked back several steps, and he thought the fight was over and started on. He heard quick steps,

looked back, and saw Tom Motley run up to Prater and strike his back with the side of his hand just below the shoulder on the left side of the backbone, and as Tom pulled his hand away Prater turned, and "I saw his coat come open and his white shirt show." Tom had to go from three to five short steps to get to Prater to cut him. "I saw Prater make no motion, and later saw Charley Vanbrunt, Tom Motley and Sam Prater getting up and Charley and Tom said, 'Let's go; he's had enough.' I went to the house with Prater, and saw him stripped and helped nurse him until he died." He also said that Prater made some remark, and attempted to strike Charley Vanbrunt at the beginning of the fight, and Charley said he didn't want to fight, and he then went for Tom, and said something before striking him. He struck at Tom two or three times before striking him, and said to Tom, "Don't get your gun," and Tom said to him, "Don't get your knife." He said further that, after he stepped between the parties, Charley Vanbrunt said he didn't want to fight, and then dashed by him and began fighting Prater.

All the testimony shows that both the appellants made common cause in the fight against the deceased, and that after Tom Motley had broken the quart bottle over the head of deceased he and Charley Vanbrunt were scuffling on the ground with him, and he said to Charley, "Let's go." Charley himself testified that he said, after stabbing Prater in the breast while on the ground in the scuffle, that he reached around under his arm and stabbed him in the back once or twice, and said to Tom, "Let's go; he's had enough." Appellants went off together.

Their version of the affair, as related by themselves and their witnesses, is that Sam Prater was drinking and quarrelsome, and had slapped the face of George Dotson out in front of the store, when Willard Patrick came up and said, "You ought not to do the boy that way." This resulted in the first fight. After it was over, the parties went around towards the rear of the store, and Prater assaulted and began striking Vanbrunt, and also striking at Tom Motley. Vanbrunt said he stabbed the deceased in the breast and also in the back under the shoulder while they were down on the ground scuffling; that he didn't begin to use his knife until after deceased had

struck him two or three times with his open knife in his hand. Deceased was striking over-handed with the knife blade up and out and striking him with the bottom of his fist, and that he acted in self-defense in stabbing the deceased, and that he was not cut by Tom Motley at all. Motley testified that he never struck deceased with his knife; struck him with his fist at first and finally broke the bottle over his head during the fight. That it was a quart bottle and had very little alcohol in it. Two witnesses testified that Tom Motley approached the deceased after he had been struck by him, and, after the witness thought the difficulty was over, ran up quickly behind him and struck him in the back with the side of his hand; one of them said he saw the knife in his hand when the lick was struck, and the other that he saw deceased's coat come open and his shirt show after he was struck. Prater was stabbed both in the breast and in the back, and died on January 6, after the fight, the physicians saying the wounds in the back caused his death. The dying declaration was admitted in which Prater stated that he was stabbed by both the appellants, by Charley Vanbrunt in the breast and Tom Motley in the back; that he never at any time during the fight had a knife.

Even if it be conceded that the parties voluntarily engaged in the fight, and that the deceased was the aggressor, still the jury was warranted in finding that appellants had no right to resist the assault made upon them by cutting and stabbing their assailant with knives, as the evidence tends to show they both did. They made common cause against the deceased, Tom Motley being the step-brother of Charley Vanbrunt, who was the brother-in-law of Willard Patrick, who had already engaged in a fight with deceased at the time at which Charley stated that he was a friend of Patrick and would fight for him and had his knife open in his hand. He used the knife in the last fight, and the jury could have found from the testimony of one of the witnesses that after the deceased struck at him and he threw up his left arm to ward off the blow and said he didn't want to fight, and Landreth stepped in between them and told the deceased "to cut it out and not to have any difficulty," Charley Vanbrunt then passed around the peacemaker and struck and grappled with

the deceased, and in the struggle stabbed him in the breast several times and reached around under him and stabbed him in the back under the shoulder as they were raising up from the ground. He says he did this, because deceased was striking at him with a knife open in his hand and in order to protect himself. The fact remains, however, that neither of the appellants was struck or cut with a knife, their clothing showing no indication whatever of any knife having been used against them in the difficulty, and the jury could well have found that the killing was unnecessary and not justifiable in self-defense within the meaning of the law, and the testimony is sufficient to warrant their verdict of voluntary manslaughter.

2. Instruction No. 8, objected to, reads:

"I charge you that the law of self-defense begins in necessity and ends in necessity, and, before the defendants can justify themselves in taking the life of Sam Prater, the defendants must have employed all the reasonable means in their power, consistent with their safety, to have avoided danger, real or apparent, to themselves, and avert the necessity of taking the life of the deceased."

It is contended that this instruction was erroneous and misleading, and deprived appellants of their right to act in their defense upon the danger as it appeared to them at the time of the difficulty; that the jury could have understood from the statement, "The law of self-defense begins in necessity and ends in necessity," that they were not justified in acting in self-defense upon the appearance of danger to them, but only if there was danger and the necessity existed for such action.

We do not think the instruction open to this objection, since it tells the jury they should have employed all reasonable means in their power, consistent with their safety, "to have avoided danger, real or apparent, to themselves." In five other instructions given, the court told the jury that they had the right to act upon the appearance of danger to the extent of taking the life of deceased if they honestly believed, without fault or carelessness on their part in reaching such conclusion, that it was necessary to do so in their defense. Instruction No. 15 was more favorable to appellants than the

law warrants. No error was committed in giving said instruction number 8, as the other instructions not in conflict therewith clearly and correctly defined the appearance of danger upon which appellant would have been justified in acting in self-defense, although it is not approved, and might well have been differently and more happily phrased.

It is next urged that no sufficient foundation was laid for the introduction of the alleged dying declaration, which was also objected to as the expression of an opinion of the deceased, rather than a statement of fact. In appellant's abstract of the testimony of Ed Landreth, who testified to the dying declaration, it is stated "that at the time Prater made these statements Prater knew he was going to die. He was physically weak, but his mind was strong." The bill of exceptions recites: "Before this witness, (Ed Landreth) testified, the showing was made before the court, among other things, evidence showed Prater said he knew he was going to die, and for us to bring his children, that he wanted to see them again," that he was physically weak, but his mind was strong; and the judge's certificate to the bill of exceptions states that it is "substantially true and correct, and finds the same to contain, so far as stated, a true and correct account of the proceedings had and done during the progress of the trial."

It was within the province of the court to hear the circumstances under which the declarations were made and to determine whether they were admissible in evidence, and it was the jury's province to weigh all the circumstances under which they were made and give to them only such credit upon the whole evidence as they thought they deserved and were entitled to. Upon this record not showing that all the testimony heard at the trial is included in it and the statement of the bill of exceptions that before the witness testified as to the dying declaration a showing was made before the court that Prater knew at the time he made the declaration he was going to die, it must be conclusively presumed that the proper foundation for the admission of the declaration was made before it was introduced. Neither is there any merit in the contention that it was only the expression of an opinion, and not a statement of facts that could have been known to the deceased. Questions of like kind were raised in a recent

case and decided adversely to appellant's contention. *Rhea* v. *State*, 104 Ark. 162.

It is next contended that the court erred in refusing to grant appellants a new trial, because of the improper argument of the prosecuting attorney.

The prosecuting attorney, in closing his argument, stated that Sam Prater, prior to making his dying declaration, had signed an affidavit before a justice of the peace in which he swore he had no knife in his hand at the time of the difficulty and that both of the defendants cut him. This statement was objected to, and the court instructed the jury that it was an improper argument and not to consider the statement, and the prosecuting attorney thereupon said it was only his opinion, and, the court having ruled upon it, he didn't want them to consider anything he had said about the affidavit, and did not mention it further.

Such statement of the prosecuting attorney was unwarranted and improper, as the court told the jury, but his direction to them that it should not be considered in evidence, with the prosecuting attorney's statement that they should disregard it, and no further mention being made of the matter during the argument, had the effect to remove any prejudice that might otherwise have resulted from the making of such statement. *Skaggs* v. *State*, 88 Ark. 62.

Upon a careful review of the whole record, we find no prejudicial error committed, and the judgment is affirmed.