WHITENER v. STATE.

Opinion delivered July 5, 1915.

1.  HOMICIDE—MANSLAUGHTER—SUFFICIENCY OF EVIDENCE.—In a prosecution for homicide, when defendant killed deceased by jabbing him with a pitch fork, and striking him over the head, the evidence held sufficient to warrant a conviction of manslaughter.

2.  CRIMINAL LAW—DEFENDANT AS WITNESS—CREDIBILITY.—In a prosecution for homicide, when the defendant took the stand in his own behalf, it is proper for the trial court to instruct the jury as to his credibility.

3.  HOMICIDE—SELF-DEFENSE.—It is the duty of defendant to show that he employed all reasonable means within his power consistent with safety, to avoid the danger, real or apparent to him, to avert the necessity of taking life, in order to plead self-defense.

4.  TRIAL—REMARKS OF COUNSEL—INVITED ERROR—REMOVAL OF PREJUDICE.—Defendant took a change of venue in a criminal case, and in arguing the case, his counsel remarked that he was glad the case was tried in B. County, away from the prejudice existing in W.

County; the prosecuting attorney stated to the jury, that "the defendant was not willing to try his case in W. County, where he lived." *Held*, these remarks were invited error, being made in response to defendant's arguments, but that if any prejudice existed it was removed by a proper admonition of the court.

Appeal from Benton Circuit Court; *J. S. Maples*, Judge; affirmed.

*Walker & Walker* and *McGill & Lindsey*, for appellant.

Counsel argue the points stated in the opinion, but cite no authorities.

*Wm. L. Moose*, Attorney General, and *Jno. P. Streepey*, Assistant, for appellee.

1.   The testimony was conflicting, but there was sufficient legal evidence to sustain the conviction, and the jury's verdict should stand. 109 Ark. 130; 109 Ark. 138.

2.   Instruction 6 was correct, and has frequently been approved by this court. 77 Ark. 334; 110 Ark. 606-611.   Instruction 7 also was correct. 105 Ark. 608-613.

3.   The prosecuting attorney's argument was, if erroneous, invited error, which was cured by the court's admonition. 105 Ark. 615.

HART, J.   Arthur Whitener was indicted for murder in the second degree charged to have been committed by killing Nathan Anthony in Washington County, Arkansas.   The defendant took a change of venue to Benton County, where, in a trial before a jury, he was convicted of manslaughter and his punishment assessed by the jury at three years in the State penitentiary.   From the judgment of conviction the defendant has appealed.

The facts as proved by the State are substantially as follows:

Nathan Anthony was killed by the defendant Arthur Whitener on the 1st day of July, 1914, on the farm of Joe Frost, in Washington County, Arkansas.   The defendant struck deceased with the prongs of a pitchfork, one prong of which penetrated the abdominal cavity of Anthony, and caused his death.   At the time the deceased, Floyd Anthony, a son of the deceased, the defendant and Lige Garret were engaged in hauling oats for Joe Frost.   The

deceased and the defendant were in one wagon, and Floyd Anthony and Lige Garret were in another. Both wagons had frames on them and each wagon had a pitchfork in it to be used in loading the oats. As the two wagons went down into the field, the wagon in which the defendant and the deceased rode was about forty yards ahead of the other. The deceased was standing in the front of the wagon driving, and the defendant was sitting on the oat frame in the rear of the wagon. The witnesses in the rear wagon saw the deceased turn toward the defendant and begin talking to him. They could see him making motions with his hand and could see his mouth working, but could not hear what he said. Garret said that his attention was momentarily called away, and that when he again looked, he saw the defendant jabbing at Anthony with the pitchfork, and saw one or two strokes. He said that Anthony fell on the side of the wagon, and the defendant caught hold of him and pulled him back into the wagon and turned the fork around and struck him across the head with the handle. Anthony then got out of the wagon and went home, where he died as a result of the wounds received.

Floyd Anthony testified that at the beginning of the difficulty, his father was standing in the front end of the wagon with his left hand holding the lines; that the defendant, in jabbing his father with the pitchfork, held it with his right hand and jabbed his father three or four times; that his father fell down on the side of the wagon and the defendant caught hold of him with his left hand and pulled him back into the wagon and struck him over the head with the handle of the pitchfork.

The physicians who attended Anthony testified that there was a wound on the side of the head above the ear, but that this wound did not penetrate the skin, and in no wise contributed to his death; that they found three punctured wounds in the upper part of his abdomen on the right side caused by the prongs of the pitchfork; that one prong of the pitchfork penetrated the abdominal cavity, and that Anthony died from the effects of this wound; and that there were three small punctures on the left side

of the deceased, but that these were very short, and just barely went through the skin.

The wife of the deceased testified that he had gone to a speaking the night before, and before going out, he had taken off his old overalls and put on a new pair; that he put on the old pair the next morning, and that when he was brought home after the difficulty, she saw his overalls taken off, and there was no knife or weapon of any kind in his pocket; and that his knife and tobacco were in his other overalls. She denied that she had told a neighbor that a few days prior to the difficulty, her husband had thrown a hammer at the defendant.

Lige Garret, being recalled for further cross-examination, testified that he had worked on the Frost place with the deceased for two years; that the deceased usually carried a big, heavy knife with a broad blade about two inches long; and that deceased had told him, some days before the fatal difficulty, that he had cursed the defendant, and come very near knocking him in the head with a hammer.

In behalf of the defendant it was shown that Mrs. Anthony had told a neighbor that her husband and the defendant had had a difficulty in which her husband threw a hammer at the defendant, and that this was some time before the time of the killing.

Another witness testified that during the previous spring the deceased had told him that he was going to whip Whitener.

A number of witnesses testified that they were well acquainted with the defendant, and knew his reputation for peace and quiet in the neighborhood where he lived, and that it was good.

The defendant testified in his own behalf. He admitted the killing, but further testified that the deceased became angry at him and began to curse him, and finally ran his hand into his right-hand pocket and told defendant that he would "cut his heart out" right then; that he then grabbed the pitchfork, which was lying in the wagon, and punched deceased twice to keep him from cutting him with the knife; that he knew deceased had the knife in

his pocket because he had seen him take it out that morning, and cut a chew of tobacco with it; that after he had punched him with the fork, he turned the fork around and hit him on the head with it; that he did not intend to kill deceased, and was only trying to keep him from cutting him with the knife; that he did not strike him with the pitchfork until he had threatened to cut his heart out, and had run his hand in his pocket and started toward him; and that after the death of Anthony he went to the sheriff and surrendered himself.

(1) It is contended by counsel for the defendant that the evidence is not sufficient to support the verdict. We can not agree with them in this contention. According to the testimony of the wife of the deceased, the latter did not have a knife on the morning he was stabbed, and the jury was fully warranted in finding that the defendant killed him upon a sudden heat of passion. Even if the jury believed that the defendant struck the deceased under the belief that the deceased was going to assault him with a knife, still the jury might have found him guilty of manslaughter; for it might have believed that he acted too hastily and without due care, and, therefore, was not justified in taking life under the circumstances. *Bruder* v. *State,* 110 Ark. 402; *Pickett* v. *State,* 91 Ark. 570; *Allison* v. *State,* 74 Ark. 444.

(2) It is also insisted by counsel for the defendant that the court erred in giving instruction No. 6, which is as follows:

"The court instructs the jury that the defendant is a competent witness in his own behalf. In weighing the testimony of the accused, you have the right to take into consideration the reasonableness or unreasonableness of his account of transactions, and the interest that he has in the result of your verdict, as affecting his credibility; you are not required to receive blindly the testimony as true, but you are to consider whether it is true and made in good faith, or made for the purpose of avoiding a conviction. The court nowhere in these instructions means to tell the jury that you are to disregard the testimony of any witness; that is a matter solely for the jury, and it's

not within the province of the court to tell the jury what weight you should give to the testimony of any witness."

In regard to a similar instruction in the case of *Hudson* v. *State*, 77 Ark. 334, the court said:

"The instruction in reference to the testimony of the defendant follows very closely the law as stated by this court in *Hamilton* v. *State*, 62 Ark. 543. Beginning with the case of *Vaughan* v. *State*, 58 Ark. 353, this court has repeatedly held that it was within the discretion of a presiding judge to give such an instruction, where the defendant took the stand in his own behalf. *Vaughan* v. *State*, 58 Ark. 353; *Jones* v. *State*, 61 Ark. 88; *Hamilton* v. *State*, 62 Ark. 543." See, also, *Ridgel* v. *State*, 110 Ark. 606.

(3) Counsel for the defendant also assigns as error the action of the court in giving instruction No. 7. That instruction is as follows:

"I charge you that the right of self-defense begins in necessity and ends in necessity, and before the defendant can justify himself in taking the life of deceased (if you find he did take the life of deceased), defendant must have employed all the reasonable means in his power consistent with his safety to have avoided the danger, real or apparent, to himself to avert the necessity of taking the life of the deceased.

"I charge you that the danger, real or apparent, to the defendant, must have been so urgent and pressing as to cause the defendant to honestly believe that the killing of Nathan Anthony was necessary in order to save his own life or prevent him from receiving great bodily harm at the hands of the deceased (and defendant must have acted under the influence of these fears, and not in a spirit of revenge."

We do not think the court erred in giving this instruction.

In the case of *Motley* v. *State*, 105 Ark. 608, the court held that a similar instruction was not erroneous, and said:

"We do not think the instruction open to this objection, since it tells the jury they (referring to defendants)

should have employed all reasonable means in their power, consistent with their safety, 'to have avoided danger, real or apparent, to themselves.' In five other instructions given, the court told the jury that they had the right to act upon the appearance of danger to the extent of taking the life of deceased, if they honestly believed, without fault or carelessness on their part in reaching such conclusion, that it was necessary to do so in their defense.''

The court gave several instructions to the jury clearly and fairly defining the appearances of danger upon which the defendant would have been justified in acting in self-defense.

(4) Finally, it is insisted by counsel for the defendant that the judgment should be reversed on account of certain remarks made by the prosecuting attorney in his closing argument to the jury. One of the attorneys for the defendant had stated to the jury that the defendant was glad to have his case tried before a jury of Benton County, which would not be affected by the local prejudice against the defendant existing in Washington County. The prosecuting attorney, in his closing argument, told the jury ''the defendant was not willing to try his case in Washington County where he lived.'' Thereupon, attorneys for the defendant objected to this remark of the prosecuting attorney, and moved the court to exclude it from the jury and to direct the jury not to consider such statement. The prosecuting attorney stated to the court that the remark was made in reply to the statement of the attorney for the defendant above referred to. The court told the jury that the remarks of the prosecuting attorney were not proper, that the same should be disregarded, and that they were withdrawn by the court from their consideration.

In the first place, it may be said that the remarks of the prosecuting attorney were made in response to a statement of one of the attorneys for the defendant, and were invited error. Moreover, we are of the opinion that the admonition given by the court had the effect to remove any prejudice that might otherwise have resulted from

the making of such remarks by the prosecuting attorney. *Motley* v. *State, supra.*

We have carefully examined the record and find no error prejudicial to the rights of the defendant, and the judgment will be affirmed.