CRAWFORD v. STATE.

Opinion delivered February 25, 1918.

1. RAPE—ASSAULT WITH INTENT.—The evidence *held* sufficient to make out the crime of rape as alleged in the indictment, but that a verdict finding the defendant guilty of assault with intent to rape was not inconsistent with the proof.

2. JUROR QUALIFICATION—PREVIOUS OPINION.—In a criminal prosecution, *held*, that a venireman was not disqualified by reason of having previously formed an opinion as to the guilt or innocence of the accused.

3. WITNESSES—CROSS-EXAMINATION—RULE.—In a criminal trial, the cross-examining party is bound by the answer of a witness concerning collateral matters, and evidence of specific acts of misconduct or immorality is not admissible in a criminal case to es-

tablish bad reputation on the part of the defendant who has testified as a witness.

4. APPEAL AND ERROR—EVIDENCE—INADMISSIBLE TESTIMONY—INVITED ERROR.—A party can not introduce inadmissible testimony, thus inviting and causing an erroneous ruling of the court, and then complain that his adversary is permitted to do the same thing.

5. EVIDENCE—CRIMINAL . TRIAL—CROSS-EXAMINATION.—In a prosecution for rape, it is proper for the trial court to refuse to permit defendant's counsel to interrogate the assaulted girl concerning an act said to have been committed by the girl's sister.

6. TRIAL—PROSECUTION FOR RAPE—CROSS-EXAMINATION OF PROSECUTRIX—REMARKS OF TRIAL JUDGE.—In a prosecution for rape, remarks of the trial judge in stopping the cross-examination of the prosecutrix, a child of twelve years, *held*, not prejudicial.

7. RAPE—FORCE—DUTY TO MAKE OUTCRY.—In a prosecution for rape the question for the jury to determine is whether the assault was with force, and not merely whether outcry was made, or whether there was reasonable cause for failure to make an outcry.

8. RAPE—PHYSICAL AND MENTAL CAPACITY OF PARTY ASSAULTED.—The question of the capacity of a female infant to consent to an act of sexual intercourse takes into account her physical as well as her mental development.

Appeal from Independence Circuit Court; *Dene H. Coleman*, Judge; affirmed.

*F. O. Butt* and *McCaleb & Reeder*, for appellant.

1. The juror Broadwater was disqualified and defendant's challenges were exhausted. 113 Ark. 302; 120 *Id.* 470.

2. Improper testimony was admitted as to the bad reputation of defendant and as to the commission of other crimes. 101 Ark. 147; 99 *Id.* 604; 103 *Id.* 119. See also 91 *Id.* 555; 120 *Id.* 548; 88 *Id.* 261; 1 Greenleaf on Ev., 39; 1 Wigmore on Ev., § 56. See also as to the admission of other improper testimony, 1 Hale, Pleas of the Crown, 635; 4 Enc. Ev. 446; 10 R. C. L. 962, 975.

3. The court erred in its instructions. 105 Ark. 218; 63 *Id.* 470; 77 *Id.* 37; 99 *Id.* 558; 50 *Id.* 335. See also 68 *Id.* 336; 56 *Id.* 242; 36 *Id.* 653.

4. There was misconduct of attorney for State. 87 Ark. 461; 72 *Id.* 427, 461; 63 *Id.* 174; 71 *Id.* 427; 74 *Id.* 210.

5. There was error in the remarks of the court. 51 Ark. 147; 54 *Id.* 490; 99 *Id.* 142.

6.  The verdict is against the law and the evidence and the newly-discovered evidence.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.  Broadwater was a competent juryman. 120 Ark. 470; 114 *Id.* 472; 109 *Id.* 450; 103 *Id.* 21; 101 *Id.* 443; 85 *Id.* 64; 80 *Id.* 13; 79 *Id.* 127; 66 *Id.* 53.

2.  The testimony of Grace Patterson and others in rebuttal as to misconduct of defendant was competent. 103 Ark. 119; 72 *Id.* 586; 75 *Id.* 427; 87 *Id.* 17; 80 *Id.* 495; 57 Ark. Law Rep. 122. Proof of other similar sexual offenses was admissible. 78 Ark. 16; 112 Tenn. 572; 8 R. C. L. 204; 110 Ark. 318; 125 *Id.* 275; 127 *Id.* 289; 110 *Id.* 226; 58 Ark. Law Rep. 449, and many others; also 8 R. C. L. 201; 234 Mo. 200.

3.  There is no error in the instructions. 50 Ark. 330; 68 *Id.* 336; 127 *Id.* 516; 91 *Id.* 224.

4.  Neither the argument nor conduct of Attorney Ponder calls for a reversal. 58 Ark. Law Rep. 268.

5.  There was no error in the remarks of the court. 80 Ark. 201.

5.  The law and evidence fully warrant the verdict. 50 Ark. 330. See also 41 Minn. 285; 12 Iowa, 66; 50 *Id.* 189; 96 *Id.* 471.

6.  The cause should not be reversed for newly-discovered evidence. 125 Ark. 209; 54 *Id.* 364; 41 *Id.* 229.

McCULLOCH, C. J. The defendant, W. D. Crawford, was tried under an indictment charging him with the crime of rape, but he was convicted of assault with intent to commit rape and appeals from that judgment.

(1)  Defendant was, at the time of the commission of the offense, the superintendent of an orphans' asylum maintained by a certain fraternal society, and the female whom he is charged with having criminally assaulted was a child under his charge in the orphanage. She had attained the age of twelve years shortly before the alleged assault was committed upon her by the defendant. The assaulted child was introduced as a witness by the State

and her testimony tended to show three separate assaults upon her by the defendant, and in each that he had sexual intercourse with her against her will. The first instance alleged by her was a few days after she became twelve years of age, in March, 1917; the next time was two or three weeks later, and the last time was on July 11, 1917. The State elected to rely for conviction upon the last assault committed. The child testified that on that day she and one of her companions were going along one of the halls in the orphanage and that the defendant caught hold of her and pulled her into a room and locked the door and had sexual intercourse with her. She stated that, over her objections, he completed the act of intercourse—that she cried out in pain, but desisted on account of his insisting that she keep quiet. She testified also that she submitted to his embraces because of his authority over her as superintendent. The testimony was sufficient to make out the crime of rape as alleged in the indictment, but the verdict was not inconsistent in finding the defendant guilty of the lower charge of assault with intent to rape, for the jury might very well have found under the circumstances as related by the child that the act of intercourse did not progress sufficiently to complete the crime of rape. It is unnecessary to relate those circumstances in detail. Defendant denied that he maintained any improper relation with the child or that he ever assaulted her on that occasion or on any other occasion.

(2) The first assignment of error is in relation to the ruling of the court concerning the competency of one of the veniremen. Broadwater, the venireman in question, stated on his examination that he had formed an opinion concerning the guilt or innocence of the defendant from reading an account of the crime in a newspaper, but that he had not expressed that opinion, and he further stated that he could lay aside that opinion and try the case upon the evidence adduced in the trial. He was examined somewhat at length by counsel for the defendant and by counsel for the State, and his answers were not always clear so far as they appear in this record. For instance,

when asked at one time a direct question whether or not he could throw aside what he might have heard or read and try the case solely upon the law and evidence as given in the trial, he replied in the following words: "I think I could." Taking the whole of his examination together, however, the language used by the witness is sufficient to express a fixed willingness and ability to disregard the opinion derived from reading the newspaper and try the case upon the evidence brought forth in the trial. That being true, the juror was not disqualified by previous opinion. *Jackson* v. *State,* 103 Ark. 21; *Davidson* v. *State,* 109 Ark. 450; *McGough* v. *State,* 113 Ark. 301.

(3-4) The next assignment of error concerns the admission of certain testimony over the defendant's objection. The defendant testified in his own behalf and denied all charges of improper relation between himself and the child whom he is alleged to have assaulted. On cross-examination he was asked by the State's counsel whether or not he had made a practice of fondling the girls in the orphanage whenever he had an opportunity to do so. Certain of the girls were mentioned by name, and he was asked if he had not made a practice of hugging and kissing them in the halls and in the rooms whenever he had an opportunity. He answered the question in the negative, and denied that he had ever made any improper advances on any of the girls or young women in the orphanage. On rebuttal the State was permitted to introduce several of the girls, who testified to frequent acts of misconduct of defendant in his relations with them. The ages of these witnesses range from fourteen to eighteen, and all of them testified that defendant was accustomed to putting his arms around them and feeling their breasts and kissing them when he met them in the dark hallways or other private places. Two of the girls testified that he took three of them in a room on a certain occasion, and without having actual sexual intercourse with them, he was guilty of most disgusting conduct approaching the act of intercourse. The rule is that the cross-examining party is bound by the answer of a witness concerning col-

lateral matters, and that evidence of specific acts of mis-
conduct or immorality is not admissible in a criminal case
to establish bad reputation on the part of the defendant
who has testified as a witness. *Ware* v. *State,* 91 Ark.
555; *McAlister* v. *State,* 99 Ark. 604; *Brock* v. *State,* 101
Ark. 147. Counsel for the State defend the ruling of the
court on the ground that the testimony was competent
for the reason that the subject-matter thereof was not
collateral, but was directed to the main issue. In other
words, it is' contended that the State was entitled to in-
troduce the evidence to prove the main issue in the case,
and for that reason it was competent as original evidence.
*Peters* v. *State,* 103 Ark. 119. There are certain well es-
tablished exceptions to the rule against the admission of
evidence of one crime in proof of another, but we do not
deem it necessary to determine in the present case
whether the evidence now complained of falls within any
of those exceptions, for we are of the opinion that if an
error was committed by the court in admitting the testi-
mony it was invited by the defendant's own act in drawing
out similar testimony from another witness. It is a clear
case, we think, of invited error of which the party can not
complain. The State first introduced the assaulted girl,
who testified all about the assault, and also about her
making complaint to her companions and the condition
her undergarments were in after the assault was made.
The State then introduced one of the child's companions
who testified that she was with the girl when the defend-
ant took her into the room and that shortly afterwards
the girl came up to their room and told her about the as-
sault and showed her the condition of her undergarments.
She testified that they talked about the matter with some
of the other girls and finally decided to go and tell one of
the ladies in the orphanage about the instance, and did so.
No objection was made by the defendant to any of these
girls' testimony, but on cross-examination counsel for de-
fendant drew out the fact from the witness that the de-
fendant had assaulted her and two other girls. She testi-
fied that on one occasion the defendant took her and two

other girls into a private room (neither of them being the girl assaulted in the present case) and that he took them upon his lap one by one and took out his sexual organ and rubbed it against theirs without attempting to complete the act of intercourse. The witness stated that defendant had frequently repeated those acts of misconduct with her and the other girls whom she mentioned. The conduct of defendant with the other girls as proved by the witness introduced by the State did not differ materially from that shown by the testimony drawn out by defendant himself. In fact, the testimony drawn out by defendant from the witness, if believed, established misconduct much more gross and repulsive than that shown by the testimony of the witness introduced by the State. A party can not introduce inadmissible testimony, thus inviting and causing an erroneous ruling of the court, and then complain that his adversary is permitted to do the same thing. *Mitchell* v. *State,* 86 Ark. 486. The fact that the testimony objected to was introduced by the State in rebuttal made a question for the discretion of the court at the time of the admission of the evidence, and we can not say that there was an abuse of discretion, for the defendant on cross-examination was put on notice of the character of testimony to be introduced.

(5)    It is next insisted that the court erred in refusing to permit defendant's counsel to interrogate the assaulted girl concerning an act said to have been committed by the girl's sister. Counsel asked the child on cross-examination if she had not herself made a practice of self-abuse, which was denied, and then counsel asked her about such conduct on the part of her younger sister. Her testimony was read to her as given in the examining trial, where she had stated definitely that her younger sister had been guilty of that misconduct, and that she had taken her sister to the wife of the superintendent and reported her. The girl denied that she had stated in her previous examination that she had reported to the wife of the superintendent an act of self-abuse on the part of her sister, but stated that she had merely told the wife of the

superintendent that her sister "had done something bad." Counsel then wanted to ask her what her sister had done which she thought "was bad," but the court stopped the examination at that point. . It was not competent to show what the sister of the girl had done, and the only purpose of admitting the cross-examination at all was to test the credibility of the witness, and it was entirely sufficient to allow her to be interrogated concerning what she had stated to the wife of the superintendent, and the court was correct in not permitting counsel to interrogate her any further 'so as to go into collateral questions as to what the actual conduct of the girl's sister had been.

Another assignment relates to the remark of the court in stopping the further cross-examination of the same witness. The girl had testified concerning the discharge of semen by defendant upon her clothes and upon the floor in attempting the act of intercourse, and she was cross-examined very searchingly as to the appearance and color and consistency of the discharge, and after asking the child many questions on this subject counsel held up a piece of white paper and asked her if the matter was as white as that piece of paper. The court, in stopping the examination, made this remark: "I don't see the point of that. I don't think a child twelve years old ought to be called on to differentiate between shades of white." It is not at all probable that this remark was understood as a comment upon the weight of the evidence or the degree of intelligence of the witness. What the court really meant was that the evidence sought to be excluded was immaterial and that the time had come to stop further cross-examination on that subject. We do not think that any prejudice possibly resulted from the court's remark or ruling.

It is contended that the court erred in refusing to give defendant's requested instruction No. 1, which reads as follows:

"You are instructed that before the prosecuting witness, Zelpha Cooper, would be excused from making an outcry, she must have had reasonable grounds to believe

in good faith that her life or safety was affected; and unless you believe from the evidence in this case, taken in connection with all the facts and circumstances proven, that the said Zelpha Cooper had reasonable cause to believe that her life or safety was endangered, then the defendant can not be found guilty of the crime of rape.''

(7)   The fault of the instruction was in making the guilt or innocence of defendant turn upon the question whether or not the assaulted girl had reasonable cause to believe that her life or safety was in danger.   The question for the jury to determine was whether the assault was with force, and not merely whether or not outcry was made, or whether or not there was reasonable cause for failure to make an outcry.

(8)   The giving of instruction No. 9 by the court was assigned as error.   The instruction told the jury in substance that if it was found that the act of alleged intercourse occurred, then in determining whether or not it was forceable and against the will of the assaulted female, or with her consent, and whether or not the resistance on her part, if any, was such as to make the defendant guilty of the crime of rape, the jury was to take into consideration ''the relative ages of the prosecutrix and the dedefendant; the physical and mental development of the prosecutrix at the time of the alleged occurrence, the relations of the parties, * * * together with all the other facts and circumstances proven in the case.''   The particular part of the instruction objected to was the use of the words ''physical and mental development,'' it being contended that the physical development of a child has no relation to the question of capacity to consent to an act of sexual intercourse.   The instruction follows the language used by this court in the case of *Coates* v. *State,* 50 Ark. 330, as follows:

''If a female be an adult, but incapable of consent to carnal intercourse, from idiocy or a drug administered to her, the act is said to be forceable and against her will. The analogy of the law extends the rule to the condition of an infant, whose tender years, or exceptional want of

mental and physical development where her age is sufficient, renders her incapable of understanding the nature of the act.''

The question of the capacity of a female infant to consent to an act of sexual intercourse takes into account the physical as well as mental development of the person, for they may each have some bearing on the determination of that question. Although mental development may in some cases far outstrip the physical, yet ordinarily they progress correspondingly, and it is proper to consider the physical as well as the mental development in order to determine the capacity of a girl to understand the nature of an act of sexual intercourse. The learned judge who wrote the opinion in the Coates case, *supra,* seems to have used the word ''physical development'' advisedly, and we believe that he was correct in doing so.

There is another assignment concerning the refusal of the court to give instruction No. 7, requested by defendant as to the burden being on the State to prove the incapacity of the child to give consent, it being undisputed that she was a little over twelve years of age at the time, but we think the instruction as modified was all that defendant was entitled to have as an instruction to the jury on this subject. The instruction as given placed the burden on the State, but used the same language that the court had used in instruction No. 9 as above set forth, which conforms to the language of this court in the Coates case, *supra.*

There are other assignments which we do not consider of sufficient importance to discuss. There is a sharp conflict in the testimony, but it was legally sufficient to sustain the verdict establishing defendant's guilt. Such being the state of the testimony, it is our duty not to disturb the verdict. The judgment is, therefore, affirmed.