SMITH *v.* STATE.

Opinion delivered November 15, 1926.

1. CRIMINAL LAW—RES GESTAE.—In a prosecution for assault with intent to kill, testimony as to what was done with a gun taken from the person assaulted while the fight was in progress *held* admissible as part of *res gestae.*

2. CRIMINAL LAW—IMPROPER QUESTION—HARMLESS ERROR.—In a prosecution for assault with intent to kill, to question a witness as to whether he knew of any trouble between defendant and his wife, who was sister of the person assaulted, was not prejudicial to defendant, where the answer was in the negative.

3. WITNESSES—REDIRECT EXAMINATION—EXPLANATION OF CROSS-EXAMINATION.—Where part of a conversation is brought out on cross-examination, the entire conversation may be elicited on redirect examination.

4. WITNESSES—IMPEACHMENT OF ACCUSED.—In a prosecution for assault with intent to kill defendant's wife's brother, defendant's testimony, on cross-examination, that he had slapped his wife on one occasion, in answer to the question whether he had beaten her, *held* proper as bearing on his credibility.

5. CRIMINAL LAW—EVIDENCE—ORDER OF INTRODUCTION.—It is within the trial court's discretion to admit in rebuttal evidence which should have been introduced as direct evidence.

6. CRIMINAL LAW—BURDEN OF SHOWING PREJUDICE.—A showing as to what the answer of a witness would have been must be made before advantage can be taken of the court's refusal to allow the question to be asked.

7. WITNESSES—IMPEACHMENT.—Where a State's witness was cross-examined as to collateral matters, defendant was bound by his answers, and could not contradict him by other witnesses.

8. CRIMINAL LAW—INSTRUCTIONS—APPLICABILITY.—In a prosecution for assault with intent to kill, evidence *held* to warrant instructions formulated .on the theory that there was evidence of malice and premeditation.

9. HOMICIDE—INTENT—KIND OF INSTRUMENT USED.—In a prosecution for assault with intent to kill, the jury may consider the nature of the weapon used and the manner of using it, together with all other circumstances, in determining whether the assault was committed with intent to kill.

10. HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE.—An instruction that, to justify an assault as in self-defense, the circumstances must be sufficient to excite the fears of a reasonable person, and the defendant must act upon that influence, *held* neither abstract nor argumentative.

11. CRIMINAL LAW—ABSTRACT INSTRUCTION.—In a prosecution for assault with intent to kill, omission from an instruction of defendant's right to defend his father was proper where there was no evidence upon which to base such an instruction.

12. HOMICIDE—INSTRUCTION AS TO THREATS.—An instruction telling the jury that threats alone would not justify an assault with intent to kill *held* proper.

13. CRIMINAL LAW—INSTRUCTIONS—HARMLESS ERROR.—The giving of two instructions correctly embodying substantially the same principle of law *held* not prejudicial, though only one should have been given.

14. CRIMINAL LAW—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—Failure to incorporate in a general instruction on self-defense defendant's right to act upon the danger as it appeared to him in good faith was not prejudicial where another instruction covered that point, and the jury were instructed to consider the instructions as a whole.

15. CRIMINAL LAW—INSTRUCTIONS AS TO THREATS.—Instructions as to the jury's right to determine, from threats of either party, as to which was the aggressor in a fight, *held* not conflicting, though one was broader than the other in allowing the jury to consider threats made by either, to ascertain the condition of defendant's mind at the time of the difficulty.

16. HOMICIDE—INSTRUCTIONS—HARMLESS ERROR.—One convicted of assault with intent to kill was not prejudiced by an instruction upon aggravated assault.

17. CRIMINAL LAW—INSTRUCTION AS TO DEFENDANT'S RIGHT TO TESTIFY. —Though it is within the discretion of the trial court to give an

instruction relative to defendant's right to testify in his own behalf, it is better practice not to refer to this right or to the rules governing his credibility, but to allow him to take his place along with other witnesses under a general charge.

Appeal from Little River Circuit Court; *B. E. Isbell,* Judge; affirmed.

*Seth C. Reynolds,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HUMPHREYS, J. Appellant, Walker Smith, was indicted, tried and convicted in the circuit court of Little River County for an assault with intent to kill Pete Beavers, on the 6th day of July, 1926, and was adjudged to serve a term of one year in the State Pentientiary as a punishment therefor, from which is this appeal.

According to the testimony introduced by the State, Pete Beavers came to the home of appellant, on the Carr farm, near DeQueen, in order to protect his sister, appellant's wife, who had been having trouble with her husband. Beavers came to visit them at the request of his sister. He brought his pistol along, and carried it on the inside of his shirt almost continuously for the week he visited them. A revival was in progress near the farm, which was generally attended by the people in the community. It was conducted under a small arbor near the roadside. During Beavers' visit to the home of appellant, he inquired from some of the neighbors concerning the trouble existing between appellant and his wife. During the week there was no friction between appellant and Beavers until the evening on which the affray occurred. His sister had told Beavers of a discussion between herself and appellant, after he had beaten up their boy, at which time the boy had asked his mother to write to Beavers to come, whereupon appellant remarked, "Just let him darken the door." On Tuesday, before the difficulty on Wednesday night, Pete Beavers had gone with Judge Smith and his wife to Foreman for the purpose of sending a message, but he could not send it from Foreman, so went on to Winthrop, where he sent it. After leaving Foreman, he

got to Winthrop before the Smiths did, and returned alone, after night, to the Carr farm. During the trip to Foreman he informed the Smiths he was going to Oklahoma, but did not tell them he was going that day. Services were held at the arbor on Wednesday night, the 6th of July, which were attended by appellant and his immediate relatives and Pete Beavers, his sister, and a number of people in the community. During the services appellant, his father, R. E. Smith, and his brother, Judge Smith, stood outside of the arbor, most of the time, talking. R. E. Smith had what one of the witnesses described as a club, about four feet long and an inch and a-half thick, which he had cut in the woods, and had been using for about a week as a walking-stick. Pete Beavers had his pistol in his bosom, and his explanation for carrying same to church was that he was going to Oklahoma, and had not removed it from his person before going to church. He could make no explanation of why he had carried the pistol constantly after coming to the Carr farm. The preacher and his sister, Mrs. Babcock, who was assisting in the meeting, and her daughter, had accepted an invitation from appellant's wife to go home with her and spend the night. She remarked that her brother, Mr. Beavers, would walk home with them. Others had gathered around the preacher and were extending invitations to him to spend the night with them, when R. E. Smith came up and told appellant's wife that her boy had thrown sticks or rocks at his daughter Lee, when they started home. Her boy denied doing so, and, while the dispute was at its height, Pete Beavers stepped forward and asked his sister what the trouble was about. Before she could explain, appellant advanced hurriedly upon Pete Beavers with an open knife in his right hand, clutched him by the throat with his left, and cut him under the arm. At that time R. E. Smith, who was standing near, struck Beavers in the back with his club or walking-stick. Appellant and Beavers swung apart, and immediately came together again, falling to the ground. Appellant had the knife in his right hand and Beavers had

appellant's right hand in both of his. When they were falling, some one said, "Get that gun off of him." J. B. Tucker tried to pull appellant off of Beavers, but R. E. Smith interfered and demanded that he cease trying to separate them. Some one said to "get that gun," whereupon Judge Smith jerked Beavers' shirt open and got the gun, which was tied up in a handkerchief. Judge Smith took hold of the butt and swung the pistol into a shooting position and said, "Stand back." He then handed the gun to J. O. Tucker, but immediately requested Tucker to return it to him, which he did. The pistol was afterward turned over to an officer of the law, but just who got the knife and what was done with it was not developed. After the gun had been taken, Beavers remarked that "they had got him," whereupon appellant released him, when it was discovered that he had inflicted a deep and dangerous knife wound clear across Beavers' stomach.

The testimony introduced by appellant tended to show that the difficulty was instigated by Pete Beavers, he being the aggressor throughout, and that appellant was the only Smith who participated in the affray, and that the knife wounds were inflicted in necessary self-defense. A number of incidents leading up to and occurring during the affray have not been mentioned in stating the substance of the testimony adduced by appellant, and will not be referred to unless it becomes necessary to do so in the discussion of alleged errors committed by the trial court in the admission and exclusion of certain pieces of testimony.

The motion filed by appellant for a new trial contains forty-seven alleged errors, but all of them are not urged and argued as grounds for a reversal of the judgment. Those which are relied upon have been argued by learned counsel for appellant under the following heads:

First. That the court erred in admitting certain testimony.

Second. That the court erred in excluding certain testimony.

Third.  That the court erred in giving certain instructions.

Fourth.  That the court erred in refusing to give certain instructions.

I.  The court allowed Mr. Tucker, over the objection of appellant, to state what Judge Smith did with the gun when he took it away from Pete Beavers.  The statement objected to was to the effect that Judge Smith handed him the gun, then requested that he hand it back, which request was complied with.  This occurred while the fight was in progress and immediately after Walker Smith let Beavers up.  The testimony was admissible as a part of the *res gestae.*

J. D. Willis was allowed, over the objection of appellant, to answer whether he knew of any trouble between appellant and his wife, who was a sister of Pete Beavers. He answered in the negative, so appellant could not have been prejudiced on account of the question.

The prosecuting attorney was permitted, over the objection of appellant, to ask Pete Beavers, on redirect examination, to state the whole conversation between himself and Mr. Willis relative to the trouble between appellant and his wife.  The question was a pertinent and a proper one, because counsel for appellant, on cross-examination of Beavers, had brought out a part of the conversation.

The prosecuting attorney was allowed to ask appellant, on cross-examination, over his objection, whether he had beaten his wife.  He answered that he had slapped her on one occasion.  The question was properly approved by the trial court as bearing upon the credibility of the witness.  *Martin* v. *State,* 161 Ark. 177, 255 S. W. 1094.

The prosecuting attorney was allowed to introduce the testimony of several witnesses in rebuttal, over the objection of appellant, to the effect that they did not hear either Mrs. Walker Smith or Pete Beavers call R. E. Smith a liar when he said Mrs. Smith's boy had thrown rocks or sticks at his daughter, and other wit-

nesses to the effect that they did not see Pete Beavers run his hand in his shirt front as if to get the pistol, just before the fight began. The objection made to the testimony was that it should have been introduced as direct and not as rebuttal evidence. The objection was not tenable, for it was within the discretion of the trial court to admit it out of time. *Jordan* v. *State,* 165 Ark. 502, 265 S. W. 71.

II. The trial court refused to allow appellant to ask Pete Beavers, on cross-examination, whether he was a confederate of and peddled whiskey for John W. Owens, who was executed for killing a man by the name of Throckmorton. No showing was made by appellant that Beavers would have answered the question in the affirmative, had he been required to answer, and for this reason he is not in a position to take advantage of the court's refusal to allow and require an answer to the question. *Dixon* v. *State,* 162 Ark. 584, 258 S. W. 401.

Pete Beavers denied, on cross-examination by appellant, that he told Clydia Smith that he was going to Oklahoma and did not do it, and told Mr. Willis that he was supposed to be gone but was not; and that he was told by Judge Smith, on the way to Foreman, that he would get pinched for carrying a pistol if he did not watch out. The trial court refused to allow Clydia Smith, Mr. Willis and Judge Smith to contradict Beavers on these points, on the ground that they were collateral matters, the answers to which, on cross-examination, bound appellant. The testimony of these witnesses was properly excluded under the rule of evidence thus announced. *Crawford* v. *State,* 132 Ark. 518. 201 S. W. 784; *Lytle* v. *State,* 163 Ark. 129, 259 S. W. 394.

III. Instructions numbers 1, 2, 3, 4, 5 and 6, given at the instance of the State, over the several objections and exceptions of appellant, related to the law of assault with intent to kill, explaining fully the necessary essentials or ingredients of the crime. These instructions were formulated and given upon the theory that the testimony intro-

duced by the State tended to show malice or premeditation in the assault made by appellant upon Pete Beavers, with intent to kill him.    Appellant contends that there is no testimony whatever in the record tending to show actual malice or premeditation upon his part to take the life of Pete Beavers, or facts and circumstances from which an inference of malice or premeditation might be drawn.    We think otherwise.    A short time before the difficulty, the Smiths were seen near the arbor in consultation.    Immediately after the services closed, Walker Smith attacked Pete Beavers with an open knife and inflicted two wounds upon his body, one of which was a dangerously deep cut clear across the abdomen.    One witness testified that, almost simultaneously with the assault, Walker Smith's father struck Pete Beavers on the back with a club four feet long and an inch and a-half thick.    Other witnesses testified that, when Walker Smith was on top of Pete Beavers, cutting him, Judge Smith took Beavers' pistol out of his shirt bosom and swung it into a shooting position, saying to those crowding upon them to stand back.    These facts warranted the jury in finding that appellant, his father and brother planned the attack, and, when coupled with the circumstance that a dangerous wound was inflicted with a knife clear across the abdomen of Beavers by Walker Smith, to find that the assault was committed with intent to kill and murder Beavers.    The rule of law applicable is that "it is within the province of the jury to consider the nature of the weapon used, and the manner of using it, together with all the other circumstances in the case, in determining whether or not the assault was committed with intent to kill and murder a human being." *Chrisman* v. *State,* 54 Ark. 283, 15 S. W. 889; 13 R. C. L., page 800. We think the evidence amply sufficient to warrant the court in giving instructions numbers 1 to 6 inclusive, which were requested by the State.

Instruction number 7, given by the court at the request of the State, is as follows:

"The bare fear of those offenses to prevent which the assault is alleged to have been committed shall not be sufficient to justify an assault to kill. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the defendant really acted upon that influence, and not in a spirit of revenge."

The instruction is not abstract and argumentative, as contended. Furthermore, it is a correct rule of law. *Palmore* v. *State*, 29 Ark. 248.

Instructions numbers 8 and 9, given at the request of the State, are assailed as defective because they eliminated the right of appellant to defend his father, if it appeared to him, as a reasonable man, that his father was about to be attacked by Beavers, but we are unable to find anywhere in the record that Beavers was about to attack appellant's father. Had the instructions embodied the right of appellant to protect his father, they would have been abstract, and for that reason erroneous.

Our special attention is called to the objection made by appellant to instruction number 13, given by the court at the request of the State, to the effect that it told the jury that, if Beavers had threatened appellant, these threats would not have justified the cutting of Beavers. Appellant has misconstrued the purport of the instruction. It told the jury that such threats alone would not justify an assault.

Objection was made by appellant to instructions numbers 9 to 17, upon the ground that they did not embody the idea that appellant had a right to act upon a reasonable apprehension of danger, provided he did not use greater force than appeared reasonably necessary to him to repulse the assault of Beavers. Our interpretation of both instructions is that they recognized the right of appellant to act upon appearances, if honestly believed by him without fault or negligence on his part. These instructions embody the very idea which appellant contends is not embraced in them. They are correct declarations of law applicable to appellant's theory of the case. *Black* v. *State*, 84 Ark. 126, 104 S. W. 1104. They

are, in substance, the same, and only one of them should have been given, but we are unable to see any prejudice resulting to appellant on account of giving both of them.

Objection was made by appellant to instruction number 18, given at the request of the State, upon the ground that it ignored his right to act upon good faith appearances to him of danger in resisting the assault made by Beavers. The instruction was a correct general declaration of law relative to the right of self-defense, not embodying, however, this particular phase of the case; but other instructions were given covering the right of appellant to act upon appearances of danger, if believed in good faith by him. The court instructed the jury that they should consider all of the instructions together as a whole. In view of this instruction, we are unable to see that prejudice resulted to appellant on account of a failure to incorporate in the general instruction on self-defense the right of appellant to act upon good faith appearances.

Objection was made by appellant to instruction number 22, given at the request of the State, because of an alleged conflict between it and instruction number 14, given at his request. Both instructions related to the right of the jury to determine, from threats made by either party, as to which one was the probable aggressor. Appellant's instruction number 14 is broader than the State's instruction number 22, to the extent of allowing the jury to consider threats made by either for the purpose of ascertaining the condition of the appellant's mind at the time of the difficulty. The mere fact that one was broader than the other does not make them conflicting.

Objection was made to instructions numbers 2 and 3, given by the court, defining manslaughter and the resultant effect in case the jury should find that appellant had been guilty of manslaughter, had Pete Beavers died. The jury was told that, in such an event, appellant should be convicted of aggravated assault, instead of an assault with intent to kill. The court then defined an aggravated

assault, which is a lesser offense than an assault with intent to kill. Appellant was convicted of the higher offense, therefore he was in no position to complain of an instruction on a lower offense, which was necessarily favorable to him. *Jones* v. *State,* 161 Ark. 242, 255 S. W. 876.

IV. The trial court, over the objection of appellant, refused to give instructions numbered A, 2, 3, 6, 7, 8, 9, 10, 12, 16, 18, and 19. We have carefully read each request and reached the conclusion that the court was right in refusing to give any one of them.

Number A requested an instructed verdict for appellant. Our interpretation of the testimony introduced by the State was to the effect that the evidence is sufficient to support a verdict and judgment for an assault with intent to kill.

Number 2 related to the question of the credibility of witnesses, and was fully covered by instruction number 5, given by the court.

Number 3 related to the right of appellant to testify in his own behalf. It is within the discretion of the trial court to give an instruction relative to the right of a defendant to testify in his own behalf, but it is the better practice not to refer to this right or rules governing his credibility and the weight to be attached to his evidence, but to allow him to take his place along with all other witnesses under the general charge relative to the credibility and weight to be attached to their testimony. *Vaughan* v. *State,* 58 Ark. 353, 24 S. W. 885; *Whitener* v. *State,* 120 Ark. 30, 178 S. W. 394; *Denton* v. *State,* 131 Ark. 1, 198 S. W. 111; *Davis* v. *State,* 150 Ark. 501, 234 S. W. 482.

Number 6, upon the question of reasonable doubt, was covered by number 1 given by the court.

Number 7 was abstract because there was no evidence tending to show that Pete Beavers was turbulent, quarrelsome or dangerous.

Number 8, upon the burden of proof, was covered by number 5, given at the request of appellant himself,

Numbers 10, 12 and 16 were abstract, as there was no testimony introduced tending to show that Beavers was making an attack upon appellant's father when he assaulted him.

Numbers 11, 13 and 15 were properly modified by the trial court so as to eliminate the right of appellant to defend his father. The testimony did not warrant the court in giving the instructions in the form asked.

No error appearing, the judgment is affirmed.